PARKER, Commissioner of Banking, Respondent, vs. BRUMDER, Appellant.

*April 9—May 12, 1925.*

*Banks: Stock transfers: Failure to record same on books of bank: Liability of transferrer to creditors: Status of bank's stock book as evidence.*

1. Sec. 221.43, Stats., providing that shares of stock of a bank shall be transferred on the books of the bank as the by-laws thereof may direct, and that all transfers shall be certified to the commissioner of banking immediately, is not merely a directory statute; and a stockholder who assigned his shares by an indorsement in blank but made no effort to have the

transfer recorded on the books of the bank, is estopped to deny that he is a stockholder, when the double liability provided by sec. 221.42 is sought to be enforced for the benefit of creditors. p. 85.

2. Sec. 221.10, Stats., which makes the stock book of the bank presumptive evidence of the facts therein stated, was contemporaneous in enactment with sec. 221.43, and merely describes the status of the stock book as evidence. p. 83.

3. Sec. 183.01, Stats., one of the provisions of the Uniform Stock Transfer Act, refers only to the title to the stock certificate, and is confined in its effects to the rights of the transferrer and transferee as between themselves. It does not modify or repeal sec. 221.43, as sec. 183.03 of the act allows a corporation to hold persons registered on its books as the owners of shares liable for calls and assessments. pp. 86, 87.

APPEAL from an order of the circuit court for Washington county: C. M. DAVISON, Circuit Judge. *Affirmed.*

The appeal is from an order sustaining a demurrer to one of the defenses contained in the defendant's answer.

The complaint in substance alleges that on the 14th day of December, 1922, the Jackson State Bank, a state banking corporation of this state, was insolvent, and that the commissioner of banking thereupon took possession of the bank and its assets for liquidation purposes; that from the stock book and the records of the bank at that time it appeared that the defendant was the owner and holder of three shares of its capital stock; that such ownership of such stock by the defendant had, pursuant to the provisions of sec. 2024—45 of the Statutes, been certified by the bank to the commissioner of banking, and that pursuant to an assessment in accordance with the statutes the defendant became liable on such stock in the sum of $300 for the benefit of creditors.

Among other things the answer, as a separate defense, alleges that the defendant on the 30th day of March, 1922, was the owner and holder of three shares of the capital stock of said bank, and that on said last named date he transferred such stock to one Rittel for value by indorsing the certificates

in blank; that no effort was made by the defendant to obtain a transfer of the stock upon the books of the bank, but he assumed that the purchaser thereof would secure such transfer.

To the defense so interposed the plaintiff demurred generally, which demurrer was sustained by the court, and from the order sustaining such demurrer defendant has prosecuted this appeal.

For the appellant there was a brief by *Arthur A. Mueller*, and oral argument by *Walter Schinz, Jr.*, both of Milwaukee.

For the respondent there was a brief by *Hoyt, Bender, McIntyre & Hoyt*, attorneys, and *Ralph M. Hoyt*, of counsel, all of Milwaukee, and oral argument by *Ralph M. Hoyt*.

DOERFLER, J. The action was brought under sec. 221.42 (formerly sec. 2024—44) of the Statutes, which among other things provides:

"The stockholders of every bank shall be individually liable . . . for the benefit of creditors of said bank to the amount of their stock at the par value thereof, in addition to the amount invested in said stock. Such liability shall continue for six months after any transfer of stock, as to the affairs of the bank at the time and prior to the date of the transfer. . . . Such liability shall accrue and become due and payable as to the stockholders of any bank forthwith, upon the commissioner of banking taking possession of the property and business of such bank under the provisions of the statutes, and may be enforced by him, in an action brought in his name, in the circuit court of the county in which such bank is located. . . ."

More than six months had elapsed after the alleged transfer and before the bank was declared insolvent. The transfer had not been recorded upon the books of the bank, and at the time when the commissioner took possession the stock still stood upon its records in the name of the defendant. The defendant contends that the transfer as made consti-

tuted a completed transfer, and that he was therefore not liable for the statutory assessment to recover which this action was brought. Plaintiff takes the position that whatever effect such transfer might have as between the parties, it did not become effectual so as to relieve the defendant from further liability to the plaintiff.

Sec. 221.43, Stats. (formerly sec. 2024—45), is as follows:

"Shares of stock of an incorporated bank shall be deemed personal property, and shall be transferred on the books of the bank, in such manner as the by-laws thereof may direct, and no transfer of stock shall be valid while the bank is under notice to make good the impairment of its capital, as provided in section 220.07, nor until such impairment shall have been made good. All transfers of stock shall be certified to the commissioner of banking immediately."

Plaintiff argues that this statute is mandatory, while the defendant takes the position that it is merely directory. A bank is a *quasi*-public institution, and there are interested in it not merely the corporation and its stockholders but also the public. Because of the great interest that the public has in a bank, the state, pursuant to the provisions of sec. 4, art. XI, of the constitution, and proper legislation enacted thereunder, has assumed the supervision and regulation of it. It has become the depository of a very large percentage of the funds not only of the people but of the state and its various political subdivisions. Failure of such an institution may result in ruin and disaster not only to the stockholders but to the entire community, and the disastrous effects of a failure may not only manifest themselves in the community where the bank exists but may be imparted to adjoining communities and may affect the welfare of the people of the entire state. Such a widespread influence arises from the business relations of banks with each other. Wisconsin has definitely learned its lesson from the baneful effects resulting from the panic of 1893, and it is due to the lesson then taught that most of our legislation upon the subject of

banks has found its origin. In order to more effectually enforce a system of supervision and regulation the legislature has seen fit to prohibit the existence of private banks and has confined the banking business to corporations expressly organized under the banking act. It has also created the office of commissioner of banking, who in the performance of his official duties is required to supervise the affairs of state banks generally.

In order that the general legislative scheme of regulation and supervision of banks might be made more effective, sec. 221.43 of the Statutes of 1923 (formerly sec. 2024—45) was enacted, and this statute in express language requires transfers of bank stock to be recorded on the books of the bank in such manner as the by-laws thereof may direct. It also provides for a certification by the bank of all transfers of stock to the banking commissioner *immediately*. Sub. (6) of sec. 221.03, dealing with articles of incorporation, provides that "Within sixty days from the filing of the articles of incorporation, the corporators shall file with the commissioner of banking, in duplicate, a complete list of the stockholders of the proposed bank, showing the number of shares held by each, the postoffice address, and the approximate worth of each." Sub. (7) (b) of sec. 221.03 provides for a declaration by the corporators, subscribed and sworn to by each of them, that all stockholders are possessed of a sufficient amount of property in this state, over lawful exemptions, to make the double liability imposed on stockholders of a bank by sec. 221.42 collectible. So that it will appear that the legislature has great concern to protect the public interest, from the very inception of the corporation, by requiring stockholders to be of sufficient financial ability to enable them to respond to the double liability of the stockholder when occasion might require. The double liability of stockholders is of no advantage or avail to the bank or to the commissioner of banking if the stockholders are financially unable to respond to such liability.

When it shall appear from an examination of the affairs of any bank in this state that its capital has been impaired or that the bank is insolvent, the commissioner is empowered, under the provisions of sec. 220.08, to take possession of the property and business of such bank and to liquidate its affairs. Such a drastic procedure can oftentimes be averted by directing an assessment upon the stockholders in order to make good the impairment; and this latter procedure is quite frequently resorted to. A bank may flourish and be blessed with a high degree of prosperity over a long period of time, but instances will arise, notwithstanding the exercise of a high degree of care on the part of the officers and directors, where one or more of its patrons indebted to it in large loans meets with disaster, so as to make such loans doubtful or uncollectible, and thereby impair the capital of the bank. The good will of the bank, which is valuable only to it as a going concern, is a valuable asset, and in order to preserve such good will and to further enable the bank to recoup its losses by a continuance of its business the stockholders and the directors are frequently willing to pay an additional assessment and thus avoid great losses which commonly follow the closing of a bank. Therefore the commissioner of banking is empowered, under the provisions of sec. 220.07, to direct and approve the levying of an assessment. These disasters oftentimes overtake a bank when least expected, and in order to meet the situation prompt action is not only desirable but the only means by which a failure may be averted. The confidence of the public in a banking institution may be ever so strong and the faith of the depositing public in its officers ever so great, yet oftentimes a rumor, wholly or partially founded on fact, or one entirely unfounded, is sufficient to destroy such confidence and faith over night. For this reason the banking commissioner and the officers and directors of the bank must at all times be in a position where they can take immediate and prompt action, and because of this sensitive nature of a bank's reputation, and the disastrous consequences which

are liable to follow, the provisions have been inserted in sec. 221.43 requiring stock transfers to be recorded upon the books of the bank and an immediate certification by the bank of any transfer. The confidence in the bank depends not only upon its actual paid-in capital and the ability and financial standing of its officers and directors, but also on the financial ability of the stockholders to respond to an assessment when the capital is actually impaired. If sec. 221.43 be deemed merely directory, and if a mere transfer of stock by indorsement or assignment be held effectual for all purposes to transfer the interests of the stockholder to the transferee, then a situation could readily be perceived where a large amount of stock would be placed in the hands of persons who would not appear as stockholders upon the books of the bank, and upon the arising of an emergency such as is heretofore referred to, considerable effort and time would be consumed before the banking commissioner would be enabled to determine the actual owners and holders of the stock and their financial ability, and in the meantime the bank might become wrecked. There is no field of financial operation known to the business world which requires such decisive, prompt, and intelligent action as is required where an effort is made to rehabilitate the affairs of a shaky bank. The largest financial institution in the state, whose capital and surplus had been impaired to an amount exceeding $2,000,000, was by the prompt action of the banking authorities of the federal government and the officers, directors, and stockholders of the bank saved from ruin, and the institution now stands, and has so stood for many years, as a monument of strength to the business interests of this state, and it is due to provisions like sec. 221.43 that many a financial disaster has been averted.

Under a statute in Kansas like sec. 221.43 of our own state, the supreme court of Kansas held:

"A bank must at all times have a register of its stockholders. It must know who is entitled to vote its stock, who is entitled to receive dividends, who may be called upon for

assessments, and, generally, who should bear the burdens and receive the benefits of stock ownership. Besides this, persons dealing with a bank have a direct interest in its personnel; and recurring events illustrate the fact that the state, as a conservator of the public welfare, has a legitimate concern in the matter. Therefore the law provides that, when a bank is organized, the president or cashier shall transmit to the bank commissioner of the state a verified statement showing the names and residences of its stockholders and the amount subscribed and paid in by each one. Laws 1897, ch. 47, § 5; Gen. Stat. 1901, § 411. After a bank has been organized and has been authorized to do business, the same certainty and publicity are required. Laws 1897, ch. 47, § 47; Gen. Stat. 1901, § 453. True, shares of stock are personal property, and as such are transferable; but upon a change of ownership the transfer must be made on the books of the bank, and must be certified immediately to the bank commissioner. . *The provision of sec. 52, quoted above, is that shares of stock 'shall be transferred on the books of the bank.' Under the well-known canons of construction, this means that nothing short of a transfer on the books of the bank will be sufficient.* The only kind of transfer which can avail, to affect the rights of the bank, its creditors and the public, is a transfer on the books of the bank." *Faulkner v. Bank of Topeka,* 77 Kan. 385, 94 Pac. 153. See, also, *Abilene State Bank v. Strachan,* 89 Kan. 577, 132 Pac. 200, 46 L. R. A. N. s. 668.

The holding and logic of the *Faulkner Case* meets with our hearty approval.

The mere rights of the transferrer and the transferee as between themselves are not involved in the instant case. The issue is raised between the banking commissioner, as the legal representative of creditors, and the transferrer. This distinction must be clearly borne in mind. Even as to corporations in general, where the statute or the articles of incorporation require the recording of a transfer, a transfer is invalid as to the creditors of the corporation if unrecorded, although it may be valid as between the transferrer and the transferee. 6 Fletcher, Cyc. Corp. §§ 3798, 3810; 14 Corp. Jur. 752.

Counsel for the defendant further argue that under the provisions of sec. 221.10 (formerly sec. 2024—16) the stock book of the bank constitutes merely presumptive evidence of the ownership of stock therein recorded, and that such presumption is a rebuttable one; that it appears from the answer that the stock had been sold and delivered to Rittel, the transferee, and that therefore the presumption arising from the statute has been fully overcome.    Sec. 221.10 reads as follows: .

"Every bank shall keep a stock book, which shall at all times during the usual hours for transacting business, be subject to the inspection of the officers, directors and stockholders of the bank.   Such stock book shall show the name, residence and number of shares held by each stockholder. . . . In all actions, suits and proceedings such book shall be presumptive evidence of the facts therein stated."

This section must be construed in connection with sec. 221.43 and with all of the provisions of the banking act in order that its true purpose may be ascertained.   The two sections referred to were enacted contemporaneously.   To construe sec. 221.10 as argued by defendant's counsel would practically emasculate sec. 221.43 and would rob it of its protective features, which, as has heretofore been shown in this opinion, were enacted for the benefit of creditors.   Each of the statutes referred to, however, serves a distinct and definite purpose, and when properly construed may be fully harmonized without destroying the principle of public policy contained in sec. 221.43.   Sec. 221.10 merely establishes the status of the stock book as evidence, and thus settles a disputed controversy in numerous state courts of last resort, in which some had held that the record book of transfers was inadmissible, on the ground that it was hearsay, while others held that it constituted presumptive evidence of its contents. A stock transfer may be duly reported to the secretary of the bank, and through the mistake or fraud of the recording officer the true owner may not appear upon the records.   To such a situation sec. 221.10 would be applicable. The provi-

sions of sec. 221.10 would apply to the instant case if it were shown that the stock transfer had been duly reported to the recording officer, and by mistake or fraud a proper entry had not been made. The entries in the stock book would also be presumptive evidence of the ownership of stock where a dispute arises between a transferrer and a transferee, subject, however, to be rebutted by other competent evidence. But whatever status has been attributed to the records contained in the stock book, barring mistake or fraud on the part of the registrar, no showing outside of the record could have any effect whatsoever upon the public policy declared by the legislature which requires stock transfers to be recorded in the books of the bank and to be certified to the banking commissioner, so that creditors might at all times have available a record of stockholders, in order to determine whether or not they shall extend credit to or transact business with the bank.

Sec. 221.42, providing for the double liability of stockholders, was enacted for the benefit of creditors, and it is provided in such section that such liability shall continue for six months after any transfer of stock as to the affairs of the bank at the time and prior to the date of the transfer. By enacting this section the legislature recognized that creditors of a bank, in transacting business with it, rely largely upon the financial standing and the personnel of the stockholders. In limiting the period of continued liability to six months it was assumed that creditors would periodically inform themselves of the personnel and financial responsibility of the stockholders. Constant and continued watchfulness may be desirable but is not practical. Therefore a limit of sufficient duration was fixed in order to give every creditor ample opportunity to determine whether he would continue as a creditor or patron of the bank. The stock book and the records of the banking commissioner are designed to furnish available information to the public of the personnel of the stockholders. If all the stockholders succeeded in assigning their stock to irresponsible persons, and would be fortunate

enough to have the six-months period elapse before the bank was declared insolvent, and if it be held that a mere transfer to the transferee be effectual to all intents and purposes, the double liability provided for by the statute would lose its efficacy. In the instant case the defendant transferred his stock without causing the transfer to be recorded upon the stock books of the bank. By pursuing this course he led the public to believe that he still retained his status as a stockholder, and induced it to intrust its funds to the bank, upon reliance on the public records. Having permitted himself to be held out as a stockholder, he is now, under all the authorities, estopped from claiming nonliability.

In 1 Michie, Banks & Banking, p. 203, it is said:

"The transfer of bank stock not regularly entered on the stock books is ineffectual to cut off the individual liability of the stockholder, unless the transferrer has done all that can be required of him to obtain a transfer on the books, the failure to make it being due to neglect of the officials of the bank. It is not enough to rely on the vendee to have the transfer made."

In 14 Corp. Jur. 1025, the law is stated as follows:

"Where there is a requirement that transfers shall be entered on the books of the company, a transfer does not ordinarily relieve the transferrer from liability for corporate debts until it has been so registered. This doctrine is based on the theory that one who permits his name to appear and remain upon the books of a corporation as a stockholder is estopped as between himself and the creditors of the corporation to deny that he is a stockholder." See, also, 6 Fletcher, Cyc. Corp. §§ 3810, 4184; 7 Ruling Case Law, 403.

It therefore follows that in any event the defendant is estopped from claiming immunity from the liability which the statute provides and which the present action is designed to enforce.

Finally, defendant's counsel argue that sec. 1751n—1 (now sec. 183.01), a provision of the Uniform Stock Transfer Act, adopted by this state in 1913, controls the situation

in the instant case, and that under the wording of this section the delivery of a stock certificate indorsed in blank or to a specified person completes the legal transfer, and that no transfer on the books of the company is necessary; also that the Uniform Stock Transfer Act was enacted by the legislature subsequent to the adoption of sec. 2024—45 (now sec. 221.43), and that the latter has been repealed by implication. Sec. 1751n—1 (now sec. 183.01) reads as follows:

"Title to a certificate and to the shares represented thereby can be transferred only:

"(a) By delivery of the certificate indorsed either in blank or to a specified person by the person appearing by the certificate to be the owner of the shares represented thereby; or

"(b) By delivery of the certificate and a separate document containing a written assignment of the certificate or a power of attorney to sell, assign, or transfer the same or the shares represented thereby, signed by the person appearing by the certificate to be the owner of the shares represented thereby. . . .

"(2) The provisions of this section shall be applicable although the charter or articles of incorporation or code of regulations or by-laws of the corporation issuing the certificate and the certificate itself provide that the shares represented thereby shall be transferable only on the books of the corporation or shall be registered by a registrar or transferred by a transfer agent."

Assuming that the above section of the Uniform Stock Transfer Act is applicable to a transfer of all shares of stock of a corporation, including that of a bank, it becomes clear that the legislature did not intend such act to modify or repeal the provisions of sec. 221.43 (formerly sec. 2024—45). This section of the Uniform Stock Transfer Act refers merely to the title to a certificate, and is confined in its effects to the rights of the transferrer and transferee as between themselves. Under the provisions of sub. 2 of the act the operations of the statute as between the immediate parties to the transfer are made effective, notwithstanding that the charter or articles of incorporation or the

by-laws, or the certificate itself, may provide that the shares shall be transferable only on the books of the corporation, etc. There being a specific limitation in the wording of the statute, the statute cannot be extended beyond such limitation, under the doctrine of *Expressio unius est exclusio alterius*.

Briefly stated, the section of the Uniform Stock Transfer Act above quoted does not expressly or even by implication modify or repeal the express language of the statute known as sec. 221.43 (formerly sec. 2024—45). Besides, the effect of the Uniform Stock Transfer Act upon the question here at issue is definitely set at rest by the provisions of sec. 183.03 of the Statutes, which provides:

*"Corporation rights reserved.* Nothing in this act shall be construed as forbidding a corporation:
"(1)  . . .
"(2) To hold liable for calls and assessments a person registered on its books as the owner of shares."

Counsel for the plaintiff plausibly argue that if the Uniform Stock Transfer Act by its terms be held to modify or repeal sec. 221.43 (formerly sec. 2024—45), then to such extent it is unconstitutional, inasmuch as it is conceded that it was not passed in accordance with the provisions of sec. 4 of art. XI of the constitution, which provides:

"The legislature shall have power to enact a general banking law for the creation of banks, and for the regulation and supervision of the banking business, provided that the vote of two thirds of all the members elected to each house, to be taken by yeas and nays, be in favor of the passage of such law."

In view of our conclusions arrived at in this opinion, the constitutionality of the Uniform Stock Transfer Act need not be treated or considered.

We are therefore constrained to hold that the order of the lower court must be affirmed.

*By the Court.*—It is so ordered.