HOFFMANN and another, Appellants, v. WAUSAU CONCRETE COMPANY and another, Respondents.

*No. 298. Argued March 28, 1973.—Decided May 14, 1973.*
(Also reported in 207 N. W. 2d 80.)

474

478

For the appellants there were briefs by *Kelley, Weber & Bolte, S. C.*, of Wausau, and oral argument by *Richard Bolte*.

For the respondents there was a brief by *Schmitt, Nolan & Hansen* of Merrill, and oral argument by *Leonard F. Schmitt*.

HEFFERNAN, J. At the close of all testimony, but prior to the submission of the cause to the jury, the defendants moved for a directed verdict dismissing the complaint on its merits. In accordance with the recommendations of this court, the trial judge reserved ruling on the motion until after the return of the verdict. *Zillmer v. Miglautsch* (1967), 35 Wis. 2d 691, 151 N. W. 2d 741. *Zillmer* also pointed out that a party having the burden of proof must come forward with evidentiary facts and that the proof must be sufficient to remove the ultimate facts from the field of mere speculation and conjecture. In the instant case, the burden of proof was upon the plaintiff daughters of Wesley A. Steffke.

Although we have admonished trial judges to refrain from ruling on directed verdicts prior to a jury submission except in the most obvious cases, in those cases where the ruling is reserved, the test is applied on the state of the record at the time of the jury submission. In *Zillmer*, we stated that a directed verdict should be granted:

" '. . . only when the evidence gives rise to no dispute as to the material issues or only when the evidence is so clear and convincing as reasonably to permit unbiased and impartial minds to come to but one conclusion.' " *Zillmer*, page 698.

In *Milwaukee v. Bichel* (1967), 35 Wis. 2d 66, 68, 150 N. W. 2d 419, this court said:

"A verdict ought to be directed if, taking into consideration all the facts and circumstances as they appear in evidence, there is but one inference or conclusion that can be reached by a reasonable man."

In this case, the plaintiffs claim the stock in Concrete, on the theory that the assignment executed by Wesley A. Steffke, as president of Waucco, constituted a gift in trust by Waucco to Lanore Kronenwetter, as trustee for the benefit of the plaintiffs. They argue that the instrument on its face establishes the requisite intent to create a gift in trust and that the evidence shows the delivery of the assignment to Kronenwetter and subsequently to themselves. They, accordingly, conclude that there was sufficient evidence to present a jury question of whether a proper transfer of the stock was accomplished. The material facts are substantially admitted, and no real issues of fact were presented to the jury. Rather, the jury's answers went to the legal effect of the substantially undisputed testimony.

On the basis of the evidence, as a matter of law, the plaintiffs failed to prima facie prove a cause of action that would properly have permitted a jury resolution. The trial judge correctly determined that the plaintiffs, having the burden of proof, failed to come forward with sufficient evidence to permit the jury to make findings. The findings in favor of the plaintiffs could have been based only on speculation and on an improper application of legal principles. It should be added that, in this context, the legal conclusions reached by the jury are immaterial. There simply was not sufficient evidence for the case to go to the jury. The only evidence which supports, even arguably, the existence of a trust relationship is the assignment itself, which, after purportedly assigning the stock to the plaintiffs, appoints *"Lanore Kronenwetter as trustee and attorney to transfer the said stock on the books of the within named Company . . . ."*

In the recent case of *In re Mueller Travel Agency, Inc.* (1972), 56 Wis. 2d 207, 211, 212, 201 N. W. 2d 589, this court stated:

"It has long been established the mere use of the term 'in trust' or other words referring to a trust relationship in a contract is not determinative of the existence of a trust. *See: Kuether v. State* (1921), 174 Wis. 538, 183 N. W. 695; *Otjen v. Frohbach* (1912), 148 Wis. 301, 134 N. W. 832; *Danforth v. Oshkosh* (1903), 119 Wis. 262, 97 N. W. 258; *Davies v. Davies* (1901), 109 Wis. 129, 85 N. W. 201. The question of whether the initiator of a transaction intended a trust or an agency depends 'not so much on the language used, as on the characteristics and purposes of the relationship.' Bogert, *Trusts and Trustees* (2d ed. 1965), pp. 75, 76, sec. 15. It is not so much what is said as what is done in pursuance of what is said that determines a trust relationship."

The cases cited in *Mueller Travel Agency* demonstrate that parol evidence is properly admissible to show that, despite the use of words importing a trust relationship, there was no attempt to create a trust. The Restatement 2d, *Trusts*, p. 104, sec. 38, comment *d*, states that:

"If property is transferred to a person, and the words 'trustee' or 'as trustee' are inserted after the name of the transferee without stating the terms of any trust, the parol evidence rule does not exclude extrinsic evidence that no trust was intended to be created."

In the instant case, there was overwhelming evidence demonstrating that Waucco, perhaps more accurately Steffke as the sole owner of Waucco, had no intent to transfer the stock in trust for the benefit of the plaintiffs. It was undisputed, despite the assignment, that thereafter Waucco, Steffke, and Kronenwetter treated the stock as belonging solely to Waucco. The stock was voted in Waucco's name and was so registered on the books of the Waucco Concrete Company. The companies filed consolidated tax returns on the basis that Waucco continued to own the stock. Dividends on the stock were paid to Waucco.

Waucco continued to exercise dominion over the stock and, as a matter of law, the evidence is sufficient to refute any inference that might have arisen, from the face of the assignment, that Waucco intended to transfer the stock to the plaintiffs.

*Dahlke v. Dahlke* (1964), 25 Wis. 2d 559, 131 N. W. 2d 362, 132 N. W. 2d 584, dealt with a purported *inter vivos* gift of a father to his son of stock in a corporation over which the father had sole control. There was no evidence that the stock certificates themselves were ever delivered. However, at trial the son produced a stub from the company's stock certificate book which purported to show that a certificate had been prepared in his name. On appeal this court held that the entry in the stock certificate book was insufficient to show a donative intent and pointed out that the father had complete control of the corporate books and that a certificate could have been prepared without there being any intent to consummate the gift. In that case the court relied in part upon the fact that the father continued to exercise control over the stock in question and received all the dividends. The court reasoned that, since there was not sufficient evidence to show an intent to create a gift, there was also insufficient evidence to create a trust for the benefit of the son.

This court reached the same conclusion on almost identical facts in *Estate of Heller* (1933), 210 Wis. 474, 246 N. W. 683. In each of these cases there was substantial evidence that the new stock certificates had been prepared, although they were not delivered to the claimed donees.

Plaintiffs argue, and the record shows, that Steffke was a competent and knowledgeable businessman. From that, they conclude that he would not have drawn up the assignment if he had not intended it to be effective. While it may be conceded, *arguendo*, that, at the time the

assignment was executed, it was his intent that his daughters be the recipients of the stock, it is equally clear from subsequent events that his intent was indeed transitory. In the absence of delivery and the other requisites discussed herein, evidence of a fleeting intent was insufficient as a matter of law. Steffke and Waucco's dominion over the stock was continuous and was demonstrated by clear and uncontradicted evidence.

On the basis of this evidence, the trial judge correctly concluded that the plaintiffs had not assumed their burden of proof and that it was unreasonable for the jury to find any intent to make the transfer.

The record reveals additional reasons why, as a matter of law, no trust was created by the assignment. To create a valid trust, the settlor must convey the property to the trustee, who holds the property for the benefit of the *cestui que trust. Estate of Steck* (1957), 275 Wis. 290, 298, 81 N. W. 2d 729; *Sutherland v. Pierner* (1946), 249 Wis. 462, 467, 24 N. W. 2d 883; *Warsco v. Oshkosh Savings & Trust Co.* (1924), 183 Wis. 156, 160, 196 N. W. 829.

Here, the assignment by its terms conveyed nothing to the alleged trustee. It purported to be a transfer directly to the assignees. Kronenwetter, despite being called the trustee, was merely given a power of attorney to transfer the stock on the company's books. The record shows that this was never done, and there is no evidence that the stock certificate was ever delivered to Kronenwetter. Rather, the evidence shows that, upon payment of the purchase price, the certificate was turned over to Waucco by the escrow agent bank, and Steffke placed it in his personal safety-deposit box, where it remained until after his death.

In addition to the failure of the plaintiffs to produce sufficient evidence to present a triable issue on the creation of a trust, they have also failed to make a

minimal showing of an absolute gift *inter vivos*. It is boiler plate law that four elements must be demonstrated to prove a gift:

1. Intention to give on the part of the donor.
2. Delivery, actual or constructive, to the donee.
3. Termination of the donor's dominion over the subject of the gift.
4. Dominion in the donee. *Prestin v. Baumgartner* (1970), 47 Wis. 2d 574, 579, 177 N. W. 2d 825; *Peters v. Peters Auto Sales, Inc.* (1967), 37 Wis. 2d 346, 350, 155 N. W. 2d 85.

In addition, we disagree with the plaintiffs' contention that title to the stock certificate, *i.e.*, the shares in the company, could be transferred by the mere execution of the assignment. Even taking into consideration the inscription on the envelope, it was apparent that Lanore Kronenwetter was designated to transfer the assignment itself to the plaintiffs only after Steffke's death. The assignment conveyed no interest *in presento*, and, at the most, contemplated that, at some future date, Kronenwetter would transfer the stock on the books of the company.

Under the Wisconsin statutes in effect at the time this assignment was executed, the transfer of corporate stock could only be pursuant to the Uniform Stock Transfer Act, ch. 183, Stats. 1957. The cases relied upon by the plaintiffs, we believe, are immaterial to the transfer of a certificate of stock, because they refer to the assignment of other types of personal property without necessity of delivery. Plaintiffs' reliance upon *Northwestern Mut. Life Ins. Co. v. Wright* (1913), 153 Wis. 252, 140 N. W. 1078, is misplaced. In the *Wright Case*, the decedent assigned his interest in a life insurance policy to members of his family. The assignment was delivered to the insurance company, but the decedent retained the policy and gave no notification to the as-

signees of the gift. While this court upheld the assignment, it did so on the basis of the contractual terms of the policy, which provided that a notification to the insurance company rendered the assignment irrevocable. The court thus considered the delivery of the assignment to the insurer to be sufficient constructive delivery to the assignees. Importantly, in respect to the instant case, the court in *Wright* found that the transaction with the insurance company "[disabled] the old owner from efficiently recalling his act, the transaction is complete . . . ." In the instant case, Steffke recognized no such disability, and there was none. He continued to treat the stock certificates as his own.

The requirements in respect to stock transfers are specific. Sec. 183.01 (1), Stats. 1957, provides:

"(1) Title to a certificate and to the shares represented thereby can be transferred only:

"(a) By delivery of the certificate indorsed either in blank or to a specified person by the person appearing by the certificate to be the owner of the shares represented thereby; or

"(b) By delivery of the certificate and a separate document containing a written assignment of the certificate or a power of attorney to sell, assign, or transfer the same or the shares represented thereby, signed by the person appearing by the certificate to be the owner of the shares represented thereby. Such assignment or power of attorney may be either in blank or to a specified person."

Since the evidence shows that there was never any delivery of the stock certificate, the attempted transfer was insufficient to meet the requirements of the statute.

While some courts, in interpreting the Uniform Stock Transfer Act, have concluded that its only purpose is to protect the issuing corporation from adverse claims, this court has concluded that, additionally, it is intended to settle questions of title and affects "the rights of

the transferrer and transferee as between themselves." *Parker v. Brumder* (1925), 187 Wis. 75, 86, 203 N. W. 941. *See also: Estate of Heller, supra; Holmes v. Holmes* (1923), 182 Wis. 163, 196 N. W. 248.

We are satisfied that this court's past interpretation of the reach of sec. 183.01 (1), Stats. 1957, is correct. The Commissioners on Uniform Laws in their commentaries point out that the statute places emphasis on delivery in order to reflect the "fundamental purpose" of the act to make the stock certificate the representative of the shares to the fullest extent possible. 6 Uniform Laws, Annotated, page 2, sec. 1.

A purported transfer without delivery is governed by sec. 183.10, Stats. 1957:

> **"Transfer without delivery.** An attempted transfer of title to a certificate or to the shares represented thereby without delivery of the certificate shall have the effect of a promise to transfer and the obligation, if any, imposed by such promise shall be determined by the law governing the formation and performance of contracts."

This provision is, however, no solace to the plaintiffs. It is clear from the record, and the plaintiffs concede, that there was no consideration for Steffke's "promise." The plaintiffs were ignorant of the existence of the assignment until after Steffke died, ten years after the assignment was dated.

Under contract law, which the statute requires to be applied, a naked promise, unsupported by consideration, is not enforceable. The action here is for replevin, but the facts revealed by this record fail to show any likelihood that the plaintiffs could prove a contract.

The plaintiffs place some emphasis upon the fact that the assignment was under seal and that the intended transaction was between a parent and child. However, the presence of a seal establishes consideration

only when the contract has been executed. *Schwartz v. Evangelical Deaconess Society* (1970), 46 Wis. 2d 432, 441, 175 N. W. 2d 225. The attempt here, however, is to enforce an executory contract. Sec. 891.27, Stats., provides, "A seal upon an executory instrument shall be received as only presumptive evidence of a sufficient consideration."

In this case, the presumption drops out, for the record shows that there was no actual consideration. Nor are we persuaded that consideration was unnecessary because the transaction was between a father and his daughters. The assignor on the instrument in this case was not Steffke, but Waucco. We have been cited no cases, and we find none, which show that any of the legal exceptions to otherwise established rules are germane to a transaction where one of the parties is a corporation rather than a legal parent. Moreover, even if we were to consider the purported assignment as not the act of the corporation but that of Steffke personally, the law is clear in Wisconsin that the natural love and affection which is presumed to exist between a parent and child is not sufficient consideration to make a promise contractually binding.

This court has not, however, in all cases insisted upon strict compliance of the Uniform Stock Transfer Act. In *Zander v. Holly* (1957), 1 Wis. 2d 300, 84 N. W. 2d 87, the donor caused American Telephone & Telegraph Company to issue stock certificates in the joint names of the donor and the donee. In that case, this court found substantial compliance with the act, even though the stock was never delivered to the donee. The court reasoned that, since the donor had no control over the books of A. T. & T., the issuing corporation, the stock transfer on the books of the company was effectively irrevocable. The *Zander Case* was, however, distinguished in *Dahlke v. Dahlke, supra. Dahlke* pointed

out that in *Zander* the corporate books were beyond the control of the donor, but that in *Dahlke,* as in the instant case, the claimed donor was unilaterally free to reserve or change his intent.

This court will not find a valid compliance with the Uniform Stock Transfer Act where the donor has retained complete control over issuance of the stock and where no delivery has been made. It is true, as the plaintiffs argue, that the actual certificates could not have been delivered at the time of the assignment, because, pursuant to the sale to Waucco, they were held in escrow by the bank as security. They urge, as a matter of public policy, that to require the delivery of the certificate would have the undesirable result of preventing the transfer of pledged stock. It should be pointed out that, in the instant case, any assignment of the stock was in violation of the escrow agreement entered into at the time of the sale by Parsons to Waucco. That escrow agreement provided that Waucco was not "to sell, transfer or dispose of any of the stock" until final payment was made. Final payment was made eight years after the date of execution of the purported assignment. Moreover, ch. 183, Stats. 1957, does not prevent in substance the transfer of pledged stock, since an assignment of pledged stock could be enforced if it were based upon adequate consideration.

The plaintiffs have failed to assume their burden of proof, and, on the basis of the record, we conclude that a jury could make a determination only on the basis of conjecture and speculation. The trial judge properly held that a verdict should be directed in favor of the defendants and the complaint dismissed.

*By the Court.*—Judgment affirmed.