Riedeburg and another vs. Schmitt, imp.

RIEDEBURG and another, Respondents, vs. SCHMITT, imp., Appellant.

*April 20 — May 12, 1888.*

PARTNERSHIP: *Who are partners: Property chargeable with losses.*

S. and M. owned jointly a distillery. Without the knowledge of S., M. entered into partnership with the plaintiffs and furnished as his capital in the firm the said distillery for the use of the firm, and the agreed value thereof was entered as his capital on the partnership books. Afterwards S. assented to the agreement so made by M., and also gave his consent to the United States authorities that the property should be used by the firm for the purposes of a distillery, and subjected it to all claims of the government which might grow out of such use. The firm thereafter paid the taxes and insurance upon the property. S. was refused admittance to the firm, but M. agreed to divide with him his share of the profits of the partnership business. The business of the firm was unprofitable and was closed up. *Held:*

(1) S. was not a partner in the firm so as to render him personally liable to the members thereof for any part of the losses.

(2) As against S. the entire beneficial ownership of the distillery property must be deemed to have been in M. when he contributed it for the use of the firm and as his capital therein, and it was therefore firm property and is subject to the payment of the share of the losses chargeable to M.

APPEAL from the Circuit Court for *Milwaukee* County. The following statement of the case was prepared by Mr. Justice TAYLOR as a part of the opinion:

This action was brought by the respondents in the circuit court of Milwaukee county against the appellant and one William T. Marshall, for an accounting in respect to the partnership business of the late firm of H. Riedeburg & Co. The business of the said firm was operating a distillery in Milwaukee, known as the "White Malt Distillery." The plaintiffs charge in the complaint that the appellant was a member of the firm in fact, although his

name did not appear in the articles of agreement signed at the time when the partnership was created. They seek to charge him, as such partner, personally for one third of the losses of the firm, and they also seek to charge the distillery fixtures, and the lands upon which the same is situated, with one third of the losses of the firm.

The important facts in the case are: (1) That previous to the 31st day of January, 1882, the said *Schmitt* and Marshall had purchased property in the city of Milwaukee, and constructed a distillery thereon, but as yet had not entered upon the business of distilling. That the agreement between *Schmitt* and Marshall was that they should be equally interested in the business. When they were about ready to start the business of distilling, Marshall, who was in Milwaukee and in charge of the affairs of *Schmitt* and Marshall there, ascertained that they could not prudently enter upon the business contemplated, by reason of some arrangements which had been made by *Riedeburg* and *Bodden* with the brewers in said city from whom the said *Schmitt* and Marshall expected to receive their supplies for the distillery; and in consequence of such interference on the part of *Riedeburg* and *Bodden*, and for the purpose of starting the works constructed by *Schmitt* and Marshall, Marshall, without the knowledge of said *Schmitt*, on the 31st day of January, 1882, entered into the following written contract with the said *Riedeburg* and *Bodden*, viz.:

"This agreement, made and entered into the 31st day of January, 1882, by and between William T. Marshall, *Henry Riedeburg*, and *A. G. Bodden*, witnesseth, that said parties have agreed to form, and do hereby enter into and form, a copartnership to operate a distillery, to be known as the 'White Malt Distillery,' in the city of Milwaukee, under the firm name of H. Riedeburg & Co., upon the following terms and conditions: Said William T. Marshall furnishes and contributed for the use of copartnership his real estate,

consisting of lots two (2) and three (3), in block F, and the land in rear thereof running back to the Milwaukee river, in the First ward of the city of Milwaukee, and all buildings, improvements, machinery, fixtures, and apparatus thereon and used in connection with the same, including also the buildings Nos. 929 and 931 on North Water street in said city. Said property so furnished by said Marshall is valued at the sum of eleven thousand five hundred and fifty dollars, which is considered the capital of said Marshall in the firm. Said *Henry Riedeburg* and *A. G. Bodden* agree to furnish the necessary capital to carry on the business and operate the distillery. Each partner is to be allowed annually interest at the rate of seven per cent. per annum on the amount of capital by him invested in the copartnership. Said *Henry Riedeburg* and *A. G. Bodden* are to have the management of the business at the city of Milwaukee. All profits and losses of the business are to be shared by and between the said three partners equally. The term of the copartnership shall be three years from the 1st day of February, 1882. Said William T. Marshall also agrees at any time within said three years, upon the request of said *Henry Riedeburg* and *A. G. Bodden*, to sell and convey an undivided two-thirds of all the property, real and personal, by him furnished to the firm as aforesaid, for two thirds of the sum first herein mentioned.

"In witness whereof the parties hereto have hereto set their hands and seals this 31st day of January, 1882.

"WILLIAM T. MARSHALL. [Seal.]
"HENRY RIEDEBURG. [Seal.]
"A. G. BODDEN. [Seal.]

"I, *Emil Schmitt*, of Cincinnati, Ohio, having an interest in the property mentioned in the foregoing agreement with said William T. Marshall, hereby give my consent to said agreement, and I agree to join with said Marshall in conveying such property in accordance with said agreement,

upon the request of the other parties thereto as therein stated.

"*Dated February 14, 1882.*          EMIL SCHMITT."

It will be seen that, after the partnership was formed between *Riedeburg, Bodden*, and Marshall, and on the 14th of February, 1882, *Schmitt* assented to the contract made by Marshall, so far as he had undertaken to deal with the distillery and fixtures which at the time belonged to *Schmitt* and Marshall as joint owners. The firm of Riedeburg & Co. was reported to the United States authorities as composed of *Riedeburg, Bodden*, and Marshall, as required by sec. 2259, R. S. of U. S. *Schmitt* afterwards gave his written consent to the United States authorities that the property should be used by said firm for the purposes of a distillery, and subjected said real estate to all claims of the United States which might grow out of the use of said property as a distillery by said firm, as required by sec. 3262, R. S. of U. S. The firm of H. Riedeburg & Co. entered upon the business of distilling spirits under the above-named agreement, and continued it for about one year, when it was discovered that it was not profitable, the business of distilling stopped, and the business was finally closed up. The plaintiffs sold and disposed of the products of the business, and paid up all the liabilities of the firm, showing a loss of about $18,000, including interest on the plaintiffs' advances. By this action they seek to charge *Schmitt* personally with one third of said losses, and also to subject the distillery, and the lands on which it is situated, to the payment of the said one-third of the losses. The learned circuit judge, after hearing the evidence in the case, rendered a judgment in favor of the plaintiffs for the one-third of said losses, against the said *Schmitt* and Marshall, and appointed a receiver of the property, with directions to sell the same and apply the proceeds of the sale to the payment of the one-third of said losses; and, in case the proceeds of such sale should be insufficient to pay the amount found due the plaintiffs,

that an execution should issue against the property of said *Schmitt* and Marshall, or either of them, for the unpaid balance. From this judgment the defendant *Schmitt* appeals to this court. Marshall did not answer in the case, and judgment was taken against him by default. The evidence shows that he is pecuniarily irresponsible.

For the appellant there was a brief by *Dey & Friend,* and oral argument by *Mr. C. C. Dey.* To the point that *Schmitt* was not a partner in the firm they cited, besides cases referred to in the opinion, *Frost v. Moulton,* 21 Beav. 596; *Bray v. Fromont,* 6 Madd. 5; *Fitch v. Harrington,* 13 Gray, 468; *Murray v. Bogert,* 14 Johns. 318–322; *Setzer v. Beale,* 19 W. Va. 274; 1 Bates on Partn. secs. 159, 164, and cases cited; 1 Lindley on Partn. (4th ed.), ch. 1, sec. 3, p. 55. The law is well settled that an agreement to use real estate for *partnership purposes* or *as partnership property* is not sufficient to convert it into partnership stock, in the absence of evidence of such intention. *Alexander v. Kimbro,* 49 Miss. 529; *Ware v. Owens,* 42 Ala. 212; *Frink v. Branch,* 16 Conn. 261; *Theriot v. Michel,* 28 La. Ann. 107; 2 Lindley on Partn. (4th ed.), 652 *et seq.,* and cases cited in notes. And it is also well settled that it does not follow that real estate used for partnership purposes is partnership property. A contrary presumption prevails when the title is not in the firm, and to rebut that presumption it must appear either (1) that the property was paid for with firm money and used for partnership purposes, or (2) that it was by proper agreement actually brought into the firm; and (3) the latter must be determined by the intention, derived from the agreement and the acts and conduct of the partners. *Shafer's Appeal,* 106 Pa. St. 49; *Hogle v. Lowe,* 12 Nev. 286; 1 Bates on Partn. sec. 280. The facts in this case clearly show that the property should not be subject to the losses of the firm. *Gordon v. Gordon,* 49 Mich. 501; *Adams v. Bradley,* 12 id. 346; *Robertson v. Corsett,* 39 id. 777.

For the respondents there was a brief by *Jenkins, Winkler*

& *Smith*, and oral argument by *Mr. F. C. Winkler.* To the point that under the facts in this case *Schmitt* was a partner in the firm, they cited *Meaher v. Cox*, 37 Ala. 201; *Upham v. Hewitt*, 42 Wis. 85; *Fordyce v. Shriver*, 115 Ill. 530; *Ault v. Goodrich*, 4 Russ. 430; *Stowell v. Eldred*, 39 Wis. 614; *Goddard v. Hodyes*, 1 Crompt. & M. 33; Collyer on Partn. sec. 194, and note.

TAYLOR, J. The learned counsel for the appellant insists that the circuit court erred in finding that the appellant, *Schmitt*, was a partner in the firm of H. Riedeburg & Co., and that it was error to charge him personally with any part of the losses of said firm; and he also insists that the court erred in holding that the distillery property should be charged with the payment of any part of the debts of said firm. Upon the question as to the personal liability of *Schmitt* as a partner in the firm of H. Riedeburg & Co., we think that, upon the evidence in the case, the court erred in holding *Schmitt* a partner. In the first place, the written articles of agreement exclude him from the partnership; and, again, within three months after the partnership articles had been signed and the business commenced, *Schmitt* applied to be admitted as a partner in the business, and his application was rejected by *Riedeburg* and *Bodden*, except upon a condition which he refused to comply with. It is urged by the learned counsel for the respondents that, notwithstanding these plain and admitted facts, he must be held as a partner, because he recognized the right of Marshall to put his property into the firm business, and that Marshall for that privilege agreed with *Schmitt* that he should have one half of his third of the profits of the business of the firm. It does not appear very clearly that this arrangement between *Schmitt* and Marshall was known to *Riedeburg* and *Bodden;* but, if it was known to them, it would not make him their partner. His arrangement with

Marshall did not give him any right to interfere with the business of the partnership, or impose any duty on the other partners to see that the half of the one-third of the profits which belonged to Marshall were paid over to *Schmitt*. If A. loans B. $5,000 with the understanding that B. shall invest it in forming a partnership with C., and, instead of charging B. with interest on the money loaned, he agrees to receive of B. one half of the profits he shall realize from the partnership business, it seems to us very clear that A. does not become a partner with B. and C. The evidence does not in this case show any arrangement between *Schmitt* and Marshall materially different from the one above stated. As between *Schmitt* and Marshall, there was no agreement that *Schmitt* should pay any part of the losses which might fall upon Marshall by reason of the partnership business, but simply that, if any profits accrued to Marshall from the business of the firm, he should have one half of them as compensation for the privilege of putting his property in the firm business during the three years it was to exist.

The true rule, in cases of this kind, is concisely stated by the court of appeals in New York, in *Burnett v. Snyder*, 81 N. Y. 555. Speaking of a contract made by a third person, not a member of the firm, with one of the members of the firm, to share in the profits derived by such member from the firm, and of the liability of such third person, even to the creditors of the firm, the court say: " But the participation in the profits of a trade which makes a person a partner as to third persons is a participation in the profits as such, under circumstances which give him a proprietary interest in the profits, before division, as principal trader, . . . and a right to an account as partner, and a lien on the partnership assets in preference to the individual creditors of the partner." The facts of that case were much stronger in favor of holding the third party as a partner than in the case at bar; yet the court held he was not a partner,

even as to creditors of the firm, much less as between himself and the members of the firm. The general and universal rule is that, as between the parties comprising a partnership, no act of one partner, or any number of the partners less than the whole, can bring a new partner into the firm. In the case at bar a partnership was formed by a written agreement, by which only three were to compose the firm, and all profits of the firm were to be divided equally between the three. Now, it is clear that a fourth man cannot be brought into the firm as a member without the consent of all; and there is an entire absence of any evidence in the case showing that *Schmitt* was ever admitted to the firm as a member thereof with the assent of all parties. The evidence would appear to negative the idea that he was ever so admitted. The following, among many other authorities, sustain the contention that the evidence in this case does not make *Schmitt* a partner in the firm of H. Riedeburg & Co.: *Burnett v. Snyder*, 76 N. Y. 344; *S. C.* 81 N. Y. 550, 555; *Reynolds v. Hicks*, 19 Ind. 113; *Freeman v. Bloomfield*, 43 Mo. 392; *Rockafellow v. Miller*, 107 N. Y. 507; *Bybee v. Hawkett*, 12 Fed. Rep. 649; *Ex parte Hamper*, 17 Ves. 404; *Champion v. Bostwick*, 18 Wend. 184; *Richardson v. Hughitt*, 76 N. Y. 55; 1 Bates on Partn. § 164; 1 Lindley on Partn. (4th ed.), 55.

We are of the opinion that the circuit court erred in holding the appellant, *Schmitt*, personally liable to account to the plaintiffs for the one-third of the losses of the firm, or for any part of such losses, and that the part of the judgment holding him so liable must be reversed.

The only other question in the case is whether the real estate, viz., the distillery, the lands on which it is situated, and the personal property and fixtures therein, were a part of the firm property, so that in equity they must be held chargeable with a share of the losses of the firm in a final accounting between the members of the firm. Although

the title to this property was not in Marshall, who undertook to bring it to the firm at the time the partnership was organized, we are of the opinion that under the evidence it must, as against the appellant, *Schmitt*, be treated as though the entire beneficial ownership had been in Marshall at the time he undertook to give the partnership control of it. We come to this conclusion from the fact that, after Marshall made the partnership agreement in writing by which he, in explicit terms, furnishes and contributes for the use of the copartnership his "real estate, consisting," etc., and declaring that the property so furnished is of the value of $11,550, "which is considered the capital of said Marshall in the firm," the appellant, *Schmitt*, in writing, consented to the contract made by said Marshall, and afterwards, in further execution of said contract, *Schmitt* conveyed or released to the United States all his interest in said real estate, distillery, and fixtures, so far at least as to give the United States a preference as to all claims the United States might thereafter have against the firm of H. Riedeburg & Co. If, treating the distillery and fixtures as the property of Marshall at the time the partnership was formed, it became a part of the property belonging to the firm as between Marshall and the other members thereof, and became liable to contribute to the payment of the losses of the firm in a final accounting between the partners, then it must be held liable to contribute as against the appellant, *Schmitt.* This distillery must be treated as essentially real estate, and the question is whether, notwithstanding its character as real estate, and notwithstanding that the title was not conveyed to the firm by any of the usual forms of conveyance, it may still be treated in equity as a part of the partnership assets, and so liable to contribute as such to the payment of the losses of the firm. The rule is universal that real estate purchased with partnership funds for partnership purposes and used for such purposes, although the title be taken in the name

of one of the partners, will be treated in equity as partnership assets, and be held for the benefit of the creditors of the partnership instead of the creditors of the individual partner in whose name the title appears; and so, in winding up the business of the firm, it must be used in payment of losses instead of going to the creditors of the individual. 1 Bates on Partn. §§ 280, 281, and cases cited. In cases of this character the authorities are very much in accord; but the rule is not so well settled as to the rights of parties to real estate which is brought into the firm business at the time of its organization, and used in the business of the firm thereafter. Whether real estate owned by one or more members of a firm at the time of the organization of the firm, and which is to be used by the firm thereafter, becomes firm property for all purposes, depends mainly upon the question whether the person bringing the property into the firm contributes it to the firm as his part of the joint stock, and has credit with the firm for the value thereof as the whole or a part of his contribution to such joint stock. This is the rule as stated by Bates, in his work on Partnership, §§ 280, 281. Mr. Bates also says, in section 280: "Whether real estate is partnership or individual property is purely a question of the intention of the partner, and, as this is rarely expressed in the deed, is a matter of inference and evidence."

Is there sufficient evidence in this case to show that the distillery and fixtures were contributed by Marshall, as his part of the joint stock, to be used by and for the use of the firm? After a careful consideration of the evidence, we think the finding of the court on that question is sustained by the evidence. We have, first, the articles of copartnership, by which Marshall put in the distillery and fixtures as his contribution to the joint stock of the partnership at a fixed valuation. He is to be paid interest on its value, as a part of the capital stock invested in the business, before

any profits are to be divided; the other partners to be paid the same rate of interest on the capital furnished by them. Afterwards, *Schmitt* and Marshall secure the lien of the United States upon this property as the property of the distilling firm. The firm pay the taxes and the insurance on the property as the property of the firm, although nothing is said in the partnership articles upon that subject. Although *Schmitt* in his testimony denies generally that the distillery was put in as firm property, and insists, as Marshall does, that nothing but its use was transferred to the company, still he says: "I was simply to allow them to use the property for distilling purposes. Marshall was allowed to put it in as working capital in the distillery." It is very likely that *Mr. Schmitt* did not understand the contract made by Marshall as conveying to the company the distillery as the part of the joint capital which Marshall was to contribute and did contribute for the use of the firm. Still, his misunderstanding of the legal effect of the contract cannot relieve him from its operation. There was another piece of evidence in the case which is almost conclusive of the intent of the parties to make the distillery the property of the firm; and that is the fact that it was entered on the books of the firm to the credit of Marshall as his capital invested in the business. This court held, in the case of *Bergeron v. Richardott*, 55 Wis. 129, that such an entry upon the books of the firm, with the knowledge and assent of the separate owner of a store building in which the business of the firm was carried on, was almost conclusive evidence that the property was firm property, though the title was never conveyed to the firm. We think, upon the whole evidence, the circuit court rightly found that the distillery was in equity firm property, so far as to subject it to the payment of the share of the losses chargeable to Marshall. The judgment, in that respect, must be affirmed. The following cases sustain the judgment in that respect:

*Wiegand v. Copeland*, 14 Fed. Rep. 118; *Arnold v. Wainwright*, 6 Minn. 358; *Bergeron v. Richardott, supra; Sigourney v. Munn*, 7 Conn. 11; *Way v. Stebbins*, 47 Mich. 296; 1 Bates on Partn. §§ 280, 281; *Shafer's Appeal*, 106 Pa. St. 49; *Black's Appeal*, 89 Pa. St. 201; *Marsh v. Davis*, 33 Kan. 326; *M'Dermot v. Laurence*, 7 Serg. & R. 443; *Ludlow v. Cooper*, 4 Ohio St. 1, 8; *Duryea v. Burt*, 28 Cal. 569, 580; *Hogle v. Lowe*, 12 Nev. 286.

*By the Court.*— That part of the judgment of the circuit court which adjudges the appellant personally liable for the one-third of the losses of the firm is reversed, and the remainder of said judgment is affirmed; the appellant to recover the costs of this appeal.

See note to this case in 38 N. W. Rep. 336.— REP.

