ESTATE OF SCHREIBER: SCHREIBER, Appellant, V. KEL-
LOGG-CITIZENS NATIONAL BANK, Personal Represent-
ative, Respondent.

*No. 472.   Argued January 6, 1975.—Decided April 21, 1975.*
(Also reported in 227 N. W. 2d 917.)

For the appellant there were briefs by *George E. Aumock, James W. Gardner,* and *Lawton & Cates,* all of Madison, and oral argument by *Mr. Aumock.*

There was a joint brief by *Lawrence V. Salutz* for the respondent and *Robert E. Koutnik,* guardian *ad litem,* both of Manitowoc, and oral argument by *Mr. Salutz.*

DAY, J.   This is an appeal from an order of the county court entered on May 31, 1973, dismissing the objection

of Barbara Schreiber, the widow of Robert Schreiber, deceased, to the inclusion in the inventory of the estate of her late husband his interest in a partnership known as "Schreiber's Complete Shopping Center" in Fish Creek, Wisconsin. The partnership had been with Robert's brother Edward E. Schreiber. Barbara claims Robert's interest in the partnership was given to her as an *inter vivos* gift prior to his death and should not have been included in the inventory of his estate.

The will of the decedent which was admitted to probate was made in 1965 prior to the marriage of the parties and Barbara was not a named beneficiary therein. Accordingly, she elected to take her widow's share under the statute. If the partnership property is included in the inventory, the beneficiaries of the will will take the major portion of the partnership property.

The following was included in the general inventory of Robert Schreiber's estate:

"½ Partnership interest in business known as 'Schreiber's Complete Shopping Center' in Fish Creek, Wisconsin; with Edward E. Schreiber, a brother; Value is established by sale price in October, 1970.                    46,303.87 [1]

Accounts held as Tenant in Common with Edward Schreiber or as Schreiber Store or Schreiber Brothers:

. . .

| | | |
|---|---|---|
| | Total | 27,025.16 |
| | One-half interest | 13,512.58 |

1970 Income earned by Schreiber General Store prior to death                    14,820.90"

---

[1] Prior to Robert Schreiber's death, "Schreiber's Complete Shopping Center" was listed with realtors by Barbara Schreiber and Edward Schreiber, Robert's brother, and a partner in the business. An offer to purchase was accepted by Barbara and Edward on July 6, 1970. On September 2, 1970, after petition for special administration by Barbara Schreiber, the trial court ordered the Kellogg-Citizens National Bank appointed as special

A hearing was held on Barbara Schreiber's objection on September 7, 1972. At the hearing Edward Schreiber testified that the partnership between him and his brother of "Schreiber's Complete Shopping Center" had been formed in 1951 following the death of their father and that written articles of partnership were drawn up and signed in March of 1954. The real estate in which the store was operated had been owned by their mother until 1959, at which time she conveyed title thereto to her two sons and their wives; each son received a three-eighths interest and each of the wives received a one-eighth interest. Robert's second wife, from whom he was divorced, quitclaimed her one-eighth interest to Robert as part of the divorce settlement.

Robert and Barbara Schreiber were married on November 5, 1969. Robert had two minor children by a previous marriage. Barbara had been employed in the store during the summer of 1967 and during the summers of 1968 and 1969 she also helped out in the store without compensation for her services. In the latter part of November, 1969, Robert became ill but did not seek medical attention. Toward the end of December and the first part of January, 1970, he again became ill and sought medical attention and his condition was diagnosed as flu. In March of 1970, he was hospitalized for a week and his condition was diagnosed as anemia. Prior to this time he had been working full time in the store with his brother Edward and Barbara had not been working in the store. Following this diagnosis, he visited the doctor once or twice a week and received blood transfusions and was hospitalized during the last week of April, 1970. On May 1, 1970,

administrator so that the property could be sold. One half of the proceeds of the sale was escrowed with the special administrator to be held pending a determination of who was entitled to the money, and the other one half was distributed directly to Edward Schreiber.

his condition was diagnosed as leukemia and he returned to the hospital about a week prior to his death, which occurred on June 14, 1970.

Barbara testified that she began working in the store about the middle of March, 1970; she said her husband could not work and asked her to take over for him. Her claim that the partnership interest of her husband was given to her as an *inter vivos* gift was supported at the hearing with certain documents which were entered as exhibits. Exhibit 1 is a document dated in 1970, in Robert Schreiber's handwriting and signed by him, which states:

"To Whom It May Concern

"On this ——— ——— 1970

"I, Robert W. Schreiber, ~~being unable to fulfil~~ turn over all benefits except insurance policy of my partnership with Edward E. Schreiber to my wife Barbara ~~Anitra~~ Below Schreiber.

"My wife, Barbara Below Schreiber, shall receive all benefits of the partnership my ½ in her own name and shall retain them in her name to use as her rights under Wisconsin statutes prescribes.

"Because I am unable to uphold my part of the partnership because of physical disability, and, because my wife Barbara ~~is fulfilling this~~ has taken my place the rewards of her labors shall be hers along with all rights to act not in my behalf but in ~~my~~ her own right as partner to my brother Edward.

Robert W. Schreiber"

Barbara testified she first saw this document around the middle or third week in March, 1970, when Robert brought it to the store, and she, Robert, and Edward had a discussion about the document at that time.

Barbara testified that the gift to her of Robert's interest in the partnership took place around April 1, 1970. Exhibit 2 is an undated, unsigned notice in deceased's handwriting which states:

"Notice

"The partnership of Edward E. Schreiber and Robert W. Schreiber has been dissolved as of April 1, 1970.

"A new partnership has been formed April 1, 1970 and shall be known as Edward E. Schreiber and Barbara A. Schreiber. All business shall be transacted under the new partnership name.

Sincerely"

Barbara testified she witnessed the decedent write this notice around the last part of March or the first part of April, 1970, in the office of the store. She said it was Edward's and her intention to send this notice to various wholesalers to let them know of the new partnership. After Robert wrote Exhibit 2, it sat on the desk in the store for quite awhile, and then someone put it in the store mailbox. On May 13, 1970, Barbara Schreiber wrote in the upper-right corner of Exhibit 2, "5/13/70 Put in proper order—several copies—Typed—dated." Exhibit 7 is a notice typed on Schreiber Store stationery.[2] Barbara testified she typed this notice in the middle of May, 1970, and that it was a direct result of Exhibit 2. After she typed it, it ended up in one of the mailboxes and copies of it were never sent to wholesalers, as intended.

Exhibits 4 and 6 were also introduced as evidence that a gift had been made. Exhibit 4 is a copy of a letter dated June 6, 1970, one week before Robert's death, addressed to the Internal Revenue Service in Kansas City, Missouri. It is signed by Barbara Schreiber and countersigned by Robert Schreiber. This letter stated:

---

[2]

"Schreiber's

"Complete Shopping Center

"Phone 2111 : Fish Creek, Wisconsin

"Notice

"The partnership of Edward E. Schreiber and Robert W. Schreiber has been dissolved as of April 1, 1970.

"A new partnership has been formed, April 1, 1970, and shall be known as Edward E. Schreiber and Barbara A. Schreiber. All business shall be transacted under the new partnership name."

"P. O. Box 187
Fish Creek, Wisconsin 54212
June 6, 1970

Internal Revenue Service Center
2306 E. Bannister Road
Kansas City, Missouri 64170

Gentlemen:

Re: Voucher 2—Form 1040–ES—Estimated Tax for Individuals—1970

My husband, Robert W. Schreiber, S. S. No. 398–12–6540, has been unable to work since March 14, 1970. He has Leukemia.

Due to his illness, I have worked in his place, and have taken over his half of the partnership. This partnership was known as:

Edward E. and Robert W. Schreiber,
d/b/a Schreiber's,
Fish Creek, Wisconsin

The partnership will henceforth be known as:

Edward E. and Barbara B. Schreiber, store name to remain the same.

My social security No. is: 395–32–2366.

Please file this payment and all future payments under my number, as my husband no longer has an income from the business.

If there is any additional information you require, please advise.

Very truly yours,

/s/ Barbara B. Schreiber

Barbara B. Schreiber
(nee Barbara Anitra Below)

Countersigned:
/s/ Robert W. Schreiber
Robert W. Schreiber"

Exhibit 6 is a similar letter, also dated June 6, 1970, and signed by both Barbara and Robert, addressed to the Wisconsin Department of Revenue. Barbara testified

that Edward Schreiber was aware that these letters were sent to the tax authorities.

Exhibit 8 is a document dated June 21, 1970, typed on Edward Schreiber's personal stationery and signed by Edward Schreiber. It states:

"Edward Schreiber
"Fish Creek, Wisconsin 54212
"June 21, 1970

"To Whom It May Concern:
"It is my wish as well as that of my late brother Bob Schreiber that his wife Barbara operate the store (Schreiber's Shopping Center) in partnership with me until such time as it is sold and that she benefit from the proceeds when it is sold.

/s/ Edward E. Schreiber
6/21/70"

Barbara testified she first saw this document on June 21, 1970, when Edward handed it to her.

Exhibit 10 is an improperly witnessed will of Robert Schreiber, dated June 8, 1970, and signed by both Robert and Edward Schreiber which was not admitted to probate. Paragraph 2 of this will provides:

"2. My half of the Store partnership has already been assumed by Barbara, inasmuch as she is working there in my place. This half of the partnership, and any monies derived therefrom is to go to Barbara."

Barbara Schreiber also testified that prior to her husband's death she and Edward Schreiber decided to sell the business and listed the store with a local realtor and one of the exhibits was a listing contract signed by her and Edward Schreiber in which they are listed as the sellers. Robert Schreiber did not sign the document although it was entered into several days prior to his death. Another exhibit is a photocopy of a bank signature card

which she signed which gave her authority to write checks on the store checking account; it is dated May 21, 1970. However, she did not write any checks for the business.

In addition to the documentary evidence, Barbara Schreiber testified she assumed full-time duties in the store on April 1, 1970, and that she did everything Robert had done in the store except to cut meat and mix paint. In compensation she received $200 a month plus groceries which was the amount that Robert had received prior to April 1, 1970, from the partnership by agreement with his brother. On three separate occasions she received other money. Near the end of June, Edward Schreiber gave her approximately $50 and she testified he said it was a quarterly interest payment from one of the store's bank accounts and then in October, 1970, Edward gave her $809, which she said he advised her was from "Sunday receipts" and in January or February of 1971, he gave her a check for $500 as part of a division. She testified that Edward Schreiber took care of the store books, both before and after April 1, 1970. The testimony of Edward Schreiber is in conflict with Barbara Schreiber. He testified he did remember seeing Exhibit 1 but not Exhibit 2 and stated, "I didn't take Barbara as a partner fully and I think she can attest to that." He also testified that he never considered Barbara to have an interest in the ownership of the property either before or after Robert's death and before Robert's death he felt she was working as Robert's agent. He admitted signing Exhibit 8 on June 21, 1970; he also admitted giving her money on three separate occasions but denied telling her it was one half of the partnership income. He also stated that Robert did help in the store on a few occasions after the middle of March. Barbara Schreiber's attorney testified at the hearing that he had had a conversation with Edward Schreiber on July 21, 1970, following Robert's

death and that Edward told him he had considered Barbara as his full partner since April 1, 1970. Edward Schreiber testified he did not remember telling this to the attorney.

The trial court in its memorandum decision discussed the real estate on which the partnership carried on its business and the personal property of the partnership separately. The trial court also concluded that the real property was not a part of the partnership property.

The trial court described the personalty of the partnership as follows:

"(a)  Stock in trade valued at $35,000.
"(b)  Good will, fixtures and equipment at $20,000.
"(c)  Deposits in banks and savings and loans of $27,025.16.
"(d)  1970 income earned by the partnership prior to death. Robert's interest is inventoried at some $14,800 but the amount is in dispute.
"Items (a) and (b) were sold with the partnership and are reflected in the purchase price as shown in the inventory."

The trial court then stated in its memorandum decision: "Taken in the light most favorable to Barbara, perhaps the documents in question could be sufficient to establish a general donative intent on the part of Robert but the exact nature and extent of such gift cannot be determined from the aforementioned documents alone."

The trial court also found that the gift failed for lack of delivery and concluded:

". . . what Robert attempted to accomplish was to substitute his wife for himself during the period of his illness and nothing more. . . ."

and concluded that in view of his illness, the deceased ". . . might well appoint his experienced wife as his agent to perform his services and receive such 'benefits' during his illness." The court then entered an order dis-

missing Barbara Schreiber's objection to the inclusion of the partnership interest in the inventory.

We disagree with the conclusion reached by the trial court and find that the trial court's conclusion goes against the great weight and clear preponderance of the evidence in this case.

Interest in a partnership may be transferred by an *inter vivos* gift under secs. 178.22 [3] and 178.23,[4] Stats., of the Uniform Partnership Act which is codified in ch. 178 of the Wisconsin Statutes. A partner's interest in partnership property is personal property and can be assigned to a third person and that assignment may be made by gift.

This court has on several occasions stated the elements which must be proved to establish an *inter vivos* gift; they are: (1) Intention to give on the part of the donor; (2) delivery, actual or constructive, to the donee; (3) termination of the donor's dominion over the subject of the gift; and (4) dominion in the donee. *Hoffmann v. Wausau Concrete Co.* (1973), 58 Wis. 2d 472, 484, 207 N. W. 2d 80; *Peters v. Peters Auto Sales, Inc.* (1967), 37 Wis. 2d 346, 350, 155 N. W. 2d 85; *Estate of Detjen*

---

[3] "178.22 **Partner's interest in partnership.** A partner's interest in the partnership is his share of the profits and surplus, and the same is personal property."

[4] "178.23 **Assignment of partner's interest.** (1) A conveyance by a partner of his interest in the partnership does not of itself dissolve the partnership, nor, as against the other partners in the absence of agreement, entitle the assignee, during the continuance of the partnership, to interfere in the management or administration of the partnership business or affairs, or to require any information or account of partnership transactions, or to inspect the partnership books; but it merely entitled the assignee to receive in accordance with his contract the profits to which the assigning partner would otherwise be entitled.

"(2) In case of a dissolution of the partnership, the assignee is entitled to receive his assignor's interest and may require an account from the date only of the last account agreed to by all the partners."

(1967), 34 Wis. 2d 46, 148 N. W. 2d 745; *Madison Trust Co. v. Skogstrom* (1936), 222 Wis. 585, 588, 269 N. W. 249.

The trial court found that the most that could be established was a general donative intent but that the exact nature and extent of what he intended to give is unclear. We disagree and find that the great weight and clear preponderance of the evidence is that he intended to give to her all of the personal property of the partnership that was listed above which includes the stock in trade, the good will, fixtures and equipment, the deposits in the bank and the income earned by the partnership prior to death. An examination of the documents makes it clear what Robert's intent was. Exhibit 1 states that Robert does "turn over all benefits except insurance policy of my partnership . . . to my wife. . . . My wife . . . shall receive all benefits of the partnership my ½ in her own name and shall retain them in her name to use as her rights under Wisconsin statutes prescribes. . . . with all rights to act not in my behalf but in . . . her own right as partner to my brother Edward." It is thus clear that she was not acting as his agent, was not acting in his behalf, but was as he stated in Exhibit 1 acting "in her own right." Exhibit 2 is a notice in Robert Schreiber's handwriting which clearly states that the partnership between him and his brother has been dissolved and that a new partnership has been formed with his brother and Barbara Schreiber. The letter to the state and federal tax authorities makes it clear that Barbara has taken over Robert Schreiber's one half of the partnership and that the partnership will henceforth be known in Edward E. and Barbara B. Schreiber. Robert Schreiber countersigned these letters, which again make his donative intent clear. While we feel it is clear that it was Robert's intent that a new partnership be formed between his wife and his brother and that it demonstrates his intent to turn over his share of the partnership to his wife, sec. 178.15 (7), Stats., provides:

"(7) No person can become a member of a partnership without the consent of all the partners."

While Exhibit 8 would be evidence that Edward Schreiber considered Barbara his partner, his testimony that he did not take her "as a partner fully" is immaterial. It is not necessary to hold that Barbara became a partner in order to show what Robert's intent was with respect to turning over his share of the partnership to her. The will which was not admissible because not a properly witnessed document also verifies what his intent was at the time these other documents were drafted by him and delivered. Robert Schreiber could give his interest in the partnership to his wife Barbara without the consent of Edward. The testimony is that Robert Schreiber gave Exhibit 1 to Barbara. Thereafter he ceased working in the store except helping out on a few occasions. She received the monthly draw of $200 which Robert Schreiber had previously received and on three separate occasions after his death she also received additional money given to her by Edward. She worked full time in the store prior to her husband's death. The significance of the delivery of Exhibit 1 to her and to his brother in the store by Robert Schreiber fortifies the conclusion that his intent throughout was to turn over his interest in the partnership to his wife. The court found that the bank accounts, along with the stock in trade, the good will, fixtures and equipment, and the earned income were all part of the partnership property. However, the court found a specific lack of donative intent in the case of the various deposits in banks and savings and loan associations amounting to $27,025.16. There was no formal assignment in writing of the deposits as such and the court concluded "To the day of his death Robert was free to withdraw from any or all of these accounts." The fact is, however, that the record does not show that he did draw from any of the accounts and the question is not what he could have done

but what he did do as evincing his intent to include the bank accounts along with the partnership property. The bank as personal representative of Robert W. Schreiber's estate in supporting the conclusion of the trial court calls our attention to sec. 241.25, Stats.[5]

In *Estate of Detjen* (1967), 34 Wis. 2d 46, 55, 56, 148 N. W. 2d 745, this court pointed out the purpose of sec. 241.25 of the statutes as ". . . protecting the bank prior to written notice of a gift of a savings deposit . . . ." In that case the court found that delivery of the bank passbook was sufficient to transfer the title to the bank account regardless of whether the delivery of the passbook had been made before or after the intent to make the gift. It was the intent to make the gift that controls. As this court said "While delivery and intention normally are simultaneous, delivery may precede or follow the expression of the intention and the gift is complete upon the happening of the second element, whichever that might be. . . . it appears to be immaterial whether Mrs. Detjen handed Ann Friedmann the passbook shortly before she went to the hospital, whether Mrs. Friedmann obtained it from a drawer after being told of the gift, or whether she already had possession of the book . . . . Property validly in the possession of the donee need not be returned to the donor so that it can be handed back to the donee." In the case at bar Mrs. Schreiber's possession of the bank books was by way of the fact that they were part of the partnership property as found by the trial court and were included in the gift of the partnership. The trial court in referring to the case of *Horn v. Horn* (1913), 152 Wis. 482, 140 N. W.

---

[5] "241.25 **Transfer of bank book to be in writing.** No gift, sale, assignment or transfer of any saving fund bank book bearing evidence of bank deposits or of any interest in the deposits represented thereby, shall be valid unless the same shall be in writing and the same or a copy thereof delivered to the bank issuing such bank deposit book."

58, which involved a gift of horses by a bedridden father to his son, emphasized that the father was not required in that case to make a physical delivery of the horses to the son because he was bedridden. However, that is not a point that was stressed by this court in its opinion. This court said at page 487:

"The question of the delivery of this property and the transfer thereof is controlled by the nature of the property and the situation of the parties at the time."

The court went on to state, "The intention of the father to pass title thereto to Louis is clearly shown by his subsequent conduct in claiming no right or dominion over them and in permitting Louis to handle and dispose of them as his individual property. Louis' treatment of them from this time, in all its details, is entirely consistent with his claim of ownership." Here all the activities of Mrs. Schreiber, including the signing of the listing agreement for the sale of the property, was all consistent with her assumption of dominion and ownership over the partnership property. We conclude that there was a valid gift of the partnership property to Mrs. Schreiber by her husband prior to his death and that the contrary finding by the trial court is against the great weight and clear preponderance of the evidence.

As to the real estate the trial court found in its memorandum decision that the real estate out of which the store was operated was not part of the partnership property. If the store realty was in fact partnership property, it would be considered as personalty under the Uniform Partnership Act, sec. 178.22, Stats., and could be transferred as personal property. *Mattson v. Wagstad* (1926), 188 Wis. 566, 573, 206 N. W. 865.

The question as to whether the real estate is part of the partnership property is whether or not it was acquired "by purchase or otherwise, on account of the partner-

ship . . . ." [6] When title to property is held in the name of a partner, the question of whether it is partnership property or not hinges on the intention of the parties. *Riedeburg v. Schmitt* (1888), 71 Wis. 644, 653, 38 N. W. 336. Here the property was not entirely owned by the partners. As pointed out, it was originally held by the partner's mother and when she conveyed title to them in 1959, she did not convey it to the partnership or just to her two sons but to the sons and their wives, giving each son a three-eighths interest and each wife a one-eighth interest. Robert Schreiber, after his divorce from his second wife, as part of the settlement, acquired her one-eighth interest and so he became the owner of one half of the property, so that at the time of his death title was held by three people, one of whom was not a member of the partnership. However, the fact that land, individually owned, is used for partnership purposes is not, standing alone, sufficient to support a finding that the land is partnership property. *Estate of Mahoney* (1939), 233 Wis. 138, 141–143, 288 N. W. 763, involved an inheritance tax proceeding. Two sisters operated a rooming-house business on real estate purchased by one of the sisters, Margaret. When the other sister, Josephine, died, the trial court found that Josephine had been seized, as a joint tenant with her sister Margaret, of the real estate involved. The trial court thus determined that

---

[6] "178.05 **Partnership property.** (1) All property originally brought into the partnership stock or subsequently acquired, by purchase or otherwise, on account of the partnership is partnership property.

"(2) Unless the contrary intention appears, property acquired with partnership funds is partnership property.

"(3) Any estate in real property may be acquired in the partnership name. Title so acquired can be conveyed only in the partnership name.

"(4) A conveyance to a partnership in the partnership name, though without words of inheritance, passes the entire estate of the grantor unless a contrary intent appears."

Josephine's heirs were liable to pay an inheritance tax on this property. This court reversed, stating:

"Assuming that the evidence was sufficient to sustain a finding of a partnership relationship between the sisters, What business was the partnership engaged in? Concededly, operating a rooming house with an equal division between the sisters of the income from the property. No contention is made, and there is not a scintilla of evidence, that the so-called partnership purchased or paid for any of the real estate in question. If Margaret contributed the use of her property to the partnership to carry on a rooming-house business, and if Josephine contributed her time and services to such business, it does not follow that the partnership, as such, had any interest in the property other than the use and income thereof."

This court so held even though the sisters, in making their income tax returns from 1921 to 1933 ". . . each charged herself with one half of the income and indicated that both the income and the property from which the income arose was jointly owned, each paying an income tax on the basis of having received one half of the net income."

In *Riedeburg v. Schmitt, supra,* land was held to be partnership property for the purpose of paying losses sustained by the partnership even though Schmitt, one of the persons who had a partial interest in the land, was not a member of the partnership. However, in *Riedeburg* the evidence was that Marshall, the other owner of the land and a partner, contributed the land to the partnership as his capital in the firm. Schmitt consented in writing to this contract made by Marshall.

There is no evidence that Edward Schreiber's wife ever contributed her share of the store real estate to the partnership. Barbara Schreiber asserts that there is no evidence that any expense incurred on behalf of real estate was paid for by any person other than the partnership. However, as the personal representative points out there is no evidence to show the partnership paid the

expenses. Furthermore, there is no evidence that the real estate was ever transferred to the partnership by those who held it individually. The trial court indicated in its memorandum decision that there was some evidence, not received at trial, but stapled to the back of one of the objector's briefs, that the real estate was listed as a partnership asset in a partnership income tax return. However, the trial court concluded, as this court did in *Estate of Mahoney* that ". . . this is probative of intent but of itself not sufficient to controvert a clear record title." The trial court was correct when it concluded:

"It is true that the property was 'used' for partnership purposes. However, the mere fact that property of individuals is so used does not of itself convert individual property to a partnership asset. While it is true that a partnership such as this usually requires the use of a store, it is not essential that the partnership own the store."

Barbara Schreiber argues that even if the realty was not partnership property, it was still conveyed to her by a valid gift. She concedes that generally real estate must be transferred by written instrument, but claims that real estate can also be transferred by parol gift, and under certain circumstances such parol gifts of real estate will be enforced on equitable grounds. She refers this court to two cases to support this proposition. *Schmitz v. Schulenburg* (1941), 236 Wis. 606, 296 N. W. 103, and *Estate of Rosenthal* (1945), 247 Wis. 555, 20 N. W. 2d 643. This court in *Schmitz* at pages 611, 612, outlined the conditions upon which a parol gift of real estate may be enforced. (1) The gift must be established by clear, satisfactory and convincing evidence; and (2) ordinarily possession by the donee is an indispensable element to part performance. The possession of the donee must be referable exclusively to the contract relied upon. (3) A parol gift of real estate will be specifically enforced only

where there has been such part performance thereof by the donee or acts have been done by him in reliance on the promise which places him in a situation which will result in fraud or prejudice to him unless the promise is performed.

In both *Schmitz* and *Rosenthal,* this court refused to enforce parol gifts or conveyances of real estate. In *Schmitz,* the decedent's daughter claimed that her father had made a parol gift to her of certain property, however, the decedent's will left the property to his son. There was evidence that the daughter and her husband lived on the property for several years prior to her father's death, made certain improvements on the property, carried insurance on the property, and paid the taxes on the property at least for some of the years in question. Nevertheless, this court held the evidence in that case did not establish the three conditions necessary to entitle the plaintiff to an equitable enforcement of the alleged gift. Thus, the court stated in *Schmitz,* at 614:

"The gift is not established by clear, satisfactory, and convincing evidence, nor does it appear that the plaintiff went into possession relying solely and exclusively upon the parol gift, nor is the character of the improvements such as to amount to part performance under well-established equitable rules."

The evidence here does not establish the three conditions necessary to entitle Barbara Schreiber to her husband's share of the store real estate.

Since this court has concluded that the trial court's finding that the store was not partnership property is not against the great weight and clear preponderance of the evidence, we also conclude there is nothing in the documentary evidence introduced at trial that establishes that Robert Schreiber intended to make a separate gift of the real estate to his wife. While she did work in the

store and signed the listing contract, it is far from clear that her possession was "referable exclusively to the contract relied upon." Her reliance, if any, was certainly not as great as that of the plaintiff in *Schmitz,* where this court refused to enforce an alleged parol gift of real estate. We conclude, therefore, that there was not a gift of the real estate in question to Barbara Schreiber and that the court properly included the real estate in the inventory of Robert Schreiber's estate. The court stated that the amount of the profits in the partnership listed as an asset was in dispute. This of course is a matter for the trial court to resolve on remand.

*By the Court.*—Order affirmed in part; reversed in part; and cause remanded for further proceedings not inconsistent with this opinion.