ESTATE OF KUEPPER: KUEPPER, Appellant, v. NATIONAL MANUFACTURERS BANK, Administrator w. w. a., Respondent.

*January 13—February 7, 1961.*

For the appellant there was a brief and oral argument by *A. W. Ponath* of Appleton.

For the respondent there was a brief and oral argument by *Edgar E. Becker* of Appleton.

BROWN, J.

I.

Respecting No. I, the loss of seed oats and plowing, the county court announced at the outset of the trial that this part of the claim arose out of a controversy concerning a lease and that he had no jurisdiction to determine such questions. Therefore he refused to take evidence upon that part of the claim. In the conclusions of law at the termination of the trial the court wrote:

"4. That the items for the loss of seed oats arising out of the lease between the decedent and the claimant in the amount of $418.22 and the claim for plowing in the amount of $52.50, being entirely disputed because of a leasehold existing between the deceased and the claimant are not within the jurisdiction of the county court, the proper remedy, if any, is suit against the executor in a court having jurisdiction in that type of action."

We consider that jurisdiction over the matter is conferred upon the county court by sec. 253.03 (2) (a), Stats., which reads:

"The county court shall have concurrent jurisdiction to hear, try, and determine all matters and controversies which may arise between any personal representative, guardian, or trustee appointed by such court and any other person

relating to title to or interest in real and personal property so far as such matter or controversy is incidental to and necessary for the complete administration of the estate, guardianship, or trust, and regardless of who has possession of the property or in whose name it may be, to the same extent and with like effect as such matters and controversies may be heard, tried, and determined in courts of general jurisdiction."

At present respondents do not contend that the county court is without jurisdiction to try and determine this portion of the claim but now say that the court and counsel agreed that the controversy could be better determined by the circuit court where there are better facilities for it. We consider ourselves confined to the record, and the record contains no such agreement. We must hold, then, that the court erred in refusing to adjudicate this part of the claim. We must reverse the judgment in this respect and remand this part of the cause for further proceedings.

## II.

No questions are raised concerning the county court's allowance of the out-of-pocket expense in the amount of $20.47 and that portion of the judgment is affirmed.

## III.

An inspection of the claim for compensation for services, as shown by charges on more than 100 different occasions, shows that the alleged services were in the main doing errands and providing transportation to Mrs. Kuepper to church or to the home of relatives of both parties. The transcript of the evidence taken in the hearing on the claim is made a part of the record but none of it is set forth by the claimant.

Claimant's demands for compensation rest on the proposition that claimant was not a member of the deceased's family,

living with her under the same roof, and therefore what he did for her must be presumed to have been done for pay. On the other hand, the respondents consider that the presumption lies in the other direction because of a demonstrated family, friendly, and neighborly relationship and the services were such, or were rendered under such circumstances, that the presumption must be that the services were gratuitous.

Whatever the presumption may be, it is not a rule of law which either awards or denies compensation for services rendered, depending on the family relationship of the parties or the house they live in. The fact to be determined is whether there was a promise, express or implied, that the services were rendered for pay. Where, as here, there is no express promise, one may be implied by the conduct of the parties, the nature of the services, their rendition and their acceptance or, on the other hand, the surrounding circumstances may support a presumption or an inference that no implied promise existed. The relationship, affection or the lack of it between the parties, and their conduct toward each other are among the facts to be considered. But still the question is whether the evidence supports an implied contract for the payment of services, or fails to give such support. The burden of proving his claim, including the burden to prove that there was an implied agreement between the nephew and his aunt, is the burden of the claimant.

The rule has been well stated by Mr. Justice WICKHEM in *Estate of St. Germain* (1945), 246 Wis. 409, 17 N. W. (2d) 582. At page 411 he quotes from *Wojahn v. National Union Bank* (1911), 144 Wis. 646, 129 N. W. 1068, as follows:

" 'If one merely accepts services from another which are valuable to him, in general, the presumption of fact arises that a compensation equivalent is to pass between the parties, and the burden of proof is upon the recipient of the service

to rebut such presumption if he would escape from rendering such equivalent.' "

Then referring to that presumption Mr. Justice WICKHEM said (p. 412):

"We shall not unduly extend this opinion by further considering the nature of this presumption, because it makes no difference whether it be considered as an artificial rebuttable presumption or a mere inference of fact. In any event, we are faced with a question whether the evidence relied on by the trial court is sufficient either to rebut the presumption, if it is a presumption, or to repel the inference, if it is an inference."

The county court, as a finding of fact, found:

"5. That the claim is not based on *any* contractual obligation of the deceased." (Emphasis added.)

In its conclusions of law, the court wrote:

"2. That there is in the circumstances of this case no implied promise to pay on the part of the deceased, and that there is no 'unjust enrichment' by the deceased, her heirs or the legatees of the deceased."

The question for us is whether or not the finding of fact, *supra,* is against the great weight and clear preponderance of the evidence. We cannot find that it is.

The only testimony on the claim is that given by the claimant. He was not permitted to testify to his transactions with the deceased because of the provisions of sec. 325.16, Stats. He called no witness to testify that there was any agreement to pay for services rendered. By implication or otherwise he had nothing of record to show any agreement. He testified that he recorded his services in a notebook, an exhibit, setting forth dates, hours of labor, and his charges and he recorded each service on the day when it was per-

formed or not later than two days afterward. The trial court made a finding of fact:

"6. That the claimant kept no record of his alleged services and account; that it is apparent that the entries in the book that was offered in evidence were not made by the claimant during the time he performed the services, but entirely on one occasion for the purpose of this trial in that all of the entries were made at one and the same time."

Our inspection of the exhibit confirms that finding.

The parties lived across the road from each other for many years. Aunt Mary was at his home from time to time for meals. There is no evidence of any change in their attitudes toward each other during the ten months or so when claimant says he performed these services for pay. He admits that she never paid him for services nor did he ask for pay. It is a significant fact that even when the services, or the charges, came to an end he presented no bill nor asked her for payment.

"The law has always regarded with great suspicion the deferring of a claim until a solvent person is deceased and can make no answer or denial." *Estate of St. Germain, supra* (p. 412).

The absence of such a bill or for any demand for the compensation which he alleges was due him raises a reasonable inference that no such charge could be sustained while Mrs. Kuepper lived to dispute it.

The nature of the charges themselves in many instances show the improbability of the charge being a valid one. For example, there is a charge of $5 for the rent of claimant's table on October 22, 1958, and on October 29th a charge of $5.50 for bringing the table back. Questioned about these two charges, the claimant testified that Mrs. Kuepper wanted to use it for some party or other. This was a table about

six feet long, with metal legs and a formica top. It did not fit his kitchen and he kept it in the shed and was not using it. It is most improbable that a woman having need of an extra table at a party would consider that she intended to pay rent or be charged rent for the use of a neighbor's table which was not being used, much less for an additional charge for transportation between two houses lying across the road from each other.

Such evidence as there is convinces us that the court's findings of fact and the judgment in accord therewith are not against the great weight and clear preponderance of the evidence. We concur in the decision of the learned trial court that the claimant has failed to carry the burden of proof that Mrs. Kuepper was indebted to him for the personal services for which he claims.

*By the Court.*—That part of the judgment allowing to plaintiff $20.47 for his disbursements is affirmed. That part of the judgment denying the claim for personal services amounting to $704.35 is affirmed. That part of the claim for loss of seed oats and for plowing is reversed, and the cause remanded for further proceedings not inconsistent with the opinion. The parties shall pay their own costs in this court.