ESTATE OF DETJEN: SORENSON, Executor, and another, Appellants, v. FRIEDMANN and another, Respondents.

*January 30—February 28, 1967.*

48

For the appellant residuary legatee there was a brief by *Wiernick & Zurlo* of Milwaukee, and oral argument by *Dominick D. Zurlo.*

For the respondents there was a brief by *Meldman & Kahn,* attorneys, and *Edward H. Meldman* and *Clifford K. Meldman* of counsel, all of Milwaukee, and oral argument by *Edward H. Meldman.*

HALLOWS, J.   The controlling questions on this appeal are whether the claimants met the burden of proof to sustain their claim against the estate for reimbursement of their payments of medical, pharmaceutical, hospital, and other expenses on behalf of the deceased and whether the evidence supports the finding of a completed gift of the bank account by the decedent.

Edith Detjen lived with the claimant Ann Friedmann for some twenty-eight years prior to her death. Ann Friedmann and the decedent's son Roy were married in 1931 but were divorced in Texas in 1933. She returned to Wauwatosa and commenced living with Mrs. Detjen in her home in Wauwatosa. Ann Friedmann remarried and she and her second husband continued to live with Mrs. Detjen until 1941 when they moved into a flat in Shorewood, Wisconsin. Mrs. Detjen then lived with them. After the death of her second husband, the claimant married Walter Friedmann and Mrs. Detjen lived with them until her death.

The testimony is undisputed that the relationship between Ann Friedmann and Mrs. Detjen was very close and described by knowledgeable witnesses as "a mother-daughter relationship," "a most wonderful relationship," and "a beautiful relationship." It appears this relationship was an unusual one and closer than many natural relationships of love and affection between mother and daughter. Throughout this relationship the decedent was

considered a member of the claimant's family. She paid no room or board and shared the intimate family life. During this time the decedent worked several days a week as a charwoman and members of the claimant's family took her to and from work, and on numerous occasions drove her to doctors and banks.

In May of 1964 Mrs. Detjen became ill and between that time and her death on February 16, 1965, bills for hospitals, doctors, drugs and other expenses, including two bills for repairs of Mrs. Detjen's Wauwatosa home, were incurred. Ann Friedmann testified she paid these bills with cash derived from her husband and obtained receipts therefor. An itemized statement of these bills including receipts, statements and other documents were admitted in evidence in support of the claim.

On January 27, 1965, Ann Friedmann drove Mrs. Detjen to the West Side Bank where Mrs. Detjen withdrew some $10,750.81 from an account and deposited $10,670.81 of it in a new savings account denominated "Mrs. Edith Detjen by Mrs. Walter Friedmann." The signature card was signed by both women. About two weeks later in the evening of February 11th Mrs. Detjen was visited by two longtime friends, Bertha Burke and Dorothy Lesniak. Mrs. Detjen had been hemorrhaging from the mouth, the doctor had seen her, and she was waiting for an ambulance to take her to the hospital. Both of these witnesses testified that prior to her last hemorrhage Mrs. Detjen called Ann Friedmann to the room and told her she was making a gift of the West Side Bank account and that she, Ann Friedmann, should withdraw the money. There is some confusion in the testimony regarding the whereabouts and the delivery of the bankbook to Ann Friedmann. Bertha Burke testified she did not see where the book came from but testified she saw it in Mrs. Detjen's hand and saw her give it to Ann Friedmann. Dorothy Lesniak testified the decedent said the passbook was in a box inside the dresser drawer but she

did not see the bankbook, although she later testified she saw a book the color of the passbook in Ann Friedmann's hands. Ann Friedmann testified, however, that when the account was opened on January 27th Mrs. Detjen gave her the passbook and it had been in her possession ever since.

In any event, the next day Ann Friedmann went to the West Side Bank, withdrew the money, and deposited it in a personal checking account in her name in the North Shore Bank. Two other witnesses testified that on occasions prior to February 11th Mrs. Detjen had told them she intended to give Ann Friedmann the account in the West Side Bank.

On February 10th, the day before Mrs. Detjen went to the hospital, she had an attorney come to the house and gave instructions to him to change her existing will to provide for a devise of the house in Wauwatosa and its furniture to Ann Friedmann. This will was executed at Mount Sinai Hospital prior to the decedent's death. After some objection to the will, it was admitted to probate and is not involved on this appeal. No appeal has been taken from the trial court's disallowance of the claim for room and board and, while the executor has also appealed, no brief was filed by him.

The trial court found the medical, drug, hospital and other expenses were paid by the claimants with the expectation of reimbursement and on behalf of and with the knowledge and approval of the decedent. We do not believe there is sufficient evidence to sustain this finding. The trial court in disallowing the claim for services, room and board stated the evidence failed to establish any contract express or implied. In respect to the claim for reimbursement, except for the nature of the expenses, the lack of evidence is identical. Whether the claim involves services rendered to the decedent or payments made for her benefit, the foundation for recovery generally is the same—a contract express or implied. And, whatever the

initial presumptions may be, the final determination, we have said in the *Estate of Kuepper* (1961), 12 Wis. (2d) 577, 107 N. W. (2d) 621, depends not on a rule of law which awards or denies compensation for services rendered depending on the family relationship of the parties or the house they live in, but upon the existence or nonexistence of an express promise, or one implied in fact, that the services were to be paid for.

In respect to the payment of decedent's debts in her lifetime, when there is no express promise of repayment, one may be implied or negated in fact from the conduct of the parties, the nature of the bill, the amount of payments, the relationship and affection or lack of it between the parties, and whether such payments are usually made under such circumstances as to indicate or negate a promise of repayment. Thus the circumstances may support a presumption or an inference of an implied promise or negate its existence, but whatever the direct evidence is and whatever inferences may be drawn from other evidence, the burden of proving an implied agreement existed between the claimant and the decedent falls upon the claimant. *Estate of Kuepper, supra; Wojahn v. National Union Bank* (1911), 144 Wis. 646, 129 N. W. 1068; *Estate of St. Germain* (1945), 246 Wis. 409, 17 N. W. (2d) 582.

In the instant case there is no question that the bills were incurred and paid. Only Ann Friedmann testified concerning them. She testified she paid them with cash she received from her husband. There is no testimony she or her husband expected to be reimbursed by the decedent. She did not testify why she paid the bills other than to state generally on cross-examination that everything she did for Mrs. Detjen was done out of love and affection for her. The record is devoid of the circumstances of the payments or of an explanation why payments were made by Ann Friedmann during a period she was taking decedent to banks in order to deposit vari-

ous items of income. The record does not show any claim was ever made against Mrs. Detjen during her lifetime or that payment of the bills was ever discussed with her.

Although not pointed out in the briefs, we note in examining Exhibit No. 2 some minor discrepancies in the claim. There seems to be some duplication of items. There are four checks for payments to doctors and the hospital signed by Ann Friedmann and drawn on her North Shore checking account which was opened with the proceeds of the claimed bank account gift from Mrs. Detjen. This in spite of the claimant's testimony that these bills were paid in cash with her husband's money and no money from this checking account was used to pay bills of Mrs. Detjen.

The strong evidence of love and affection between Ann Friedmann and Mrs. Detjen which permeates the record must be taken into consideration as a factor in determining this issue. In view of this relationship extending over twenty-eight years, the amount and nature of the payments and the fact the decedent after such payments and during her last illness made a will devising a house worth approximately $14,000 to Ann Friedmann and gave her a bank account of over $10,000, we can find no sufficient basis for the finding the claimants expected repayment for these expenditures on a debtor-creditor relationship. It is more probable the payments were made and the services rendered out of love and affection and with the expectation, if not the hope, they would be the beneficiaries of Mrs. Detjen's bounty, an expectation which was not entirely unfulfilled. We hold there was not sufficient evidence to support an implied promise to repay these payments and the allowance of the claim must be reversed.

We agree with the trial court that Mrs. Detjen made a completed gift of the bank account to Ann Friedmann on February 11th and 12th. The direct evidence established an intention to make a gift and the carrying out of that

intention. The main thrust of the appellants' argument concerns the proposition a valid *inter vivos* gift of a bank account requires some formality of a physical handing over of the passbook while uttering words of gift. The gift in this case was a chose in action or bank account evidenced by a savings deposit book. The form of this account was such that Ann Friedmann could withdraw the decedent's money if she had possession of the passbook, hence sec. 241.25, Stats., protecting the bank prior to written notice of a gift of a savings deposit, is not applicable. There is no requirement in gifts of savings deposits that possession of the savings fund bankbook must coincide with the expression of the intention to make the gift.

Generally, a gift *inter vivos* is completed when a delivery of the subject of the gift is made by the donor with intention to part with his interest in and over the property given. *Opitz v. Karel* (1903), 118 Wis. 527, 529, 95 N. W. 948; *Madison Trust Co. v. Skogstrom* (1936), 222 Wis. 585, 588, 269 N. W. 249. What form the delivery of the property must take depends upon its nature and the situation of the parties. *Horn v. Horn* (1913), 152 Wis. 482, 487, 140 N. W. 58; *Estate of Dohm* (1926), 188 Wis. 626, 628, 206 N. W. 877. In the case of a gift of money deposited in a savings account, actual delivery of money is not necessary and "symbolical delivery" of the money by delivery of the means to obtain it, namely, the passbook, is sufficient. *Estate of Schreihart* (1936), 223 Wis. 218, 270 N. W. 71; *Guardianship of Coolidge* (1960), 12 Wis. (2d) 58, 62, 106 N. W. (2d) 282. While delivery and intention normally are simultaneous, delivery may precede or follow the expression of the intention and the gift is complete upon the happening of the second element, whichever that might be. See 24 Am. Jur., Gifts, p. 743, sec. 25; 38 C. J. S., Gifts, p. 806, sec. 27.

In this case it appears to be immaterial whether Mrs. Detjen handed Ann Friedmann the passbook shortly be-

fore she went to the hospital, whether Mrs. Friedmann obtained it from a drawer after being told of the gift, or whether she already had possession of the book under conditions which were withdrawn by the language of the gift. Property validly in the possession of the donee need not be returned to the donor so that it can be handed back to the donee. 38 C. J. S., Gifts, p. 803, sec. 24. The greater liberality in upholding *inter vivos* gifts by relaxing the strict requirement of actual delivery was noted in this state years ago in *Opitz v. Karel* (1903) and *Estate of Dohm* (1926), *supra*. There is no evidence from which to draw an inference that when Ann Friedmann went to the West Side Bank on the morning of February 12th and withdrew the money she was stealing it. In view of the testimony, her withdrawal of the money is consistent with the gift thereof as testified by two longtime friends of Mrs. Detjen. We think the trial court's finding of a completed gift is supported by sufficient credible evidence to meet the burden of proof and is not against the great weight and clear preponderance of the evidence.

Upon this appeal, the appellants contend the gift of the bank account could at the most only be of 50 percent thereof because this account was established on January 27, 1965, by the deposit by Edith Detjen of all the proceeds she withdrew from a joint account she had established in her name and that of her son in 1943. On this issue the record shows only the passbook and the bank's record and their identification by an officer of the bank. There is no evidence concerning the intention of Mrs. Detjen in establishing the 1943 account in that form. What is more important, this question was not raised as an issue in the trial court and consequently was not passed upon by that court. The claim against Ann Friedmann by the executor to recover the money was based on the theory the bank account was the sole property of Edith Detjen. The claim now being raised for the first time on appeal is contrary to the claim made in the trial

court and comes too late to receive our consideration as a matter of right. The record being insufficient for an intelligent consideration of the question and the equities not being compelling, we will not consider this question.

*By the Court.*—That part of the judgment allowing the claim of Ann Friedmann and Walter Friedmann in the amount of $2,233.32 is reversed; that part of the judgment decreeing the decedent made a completed gift to Ann Friedmann of the savings account in the West Side Bank in the sum of $10,670.81 is affirmed; and the appellants are entitled to tax one half of their costs on this appeal.