IN RE the RETURN OF CERTAIN SILVER: Lillian POTTS, on behalf of the Estate of Charles Gavcus, Plaintiff-Appellant,

v.

Alfred GARIONIS, personal representative of the Estate of Charles Gavcus, Alfred Garionis, individually, Defendants,

Anastasia GAVCUS, Defendant-Respondent. †

Court of Appeals

*No. 83–2073. Submitted on briefs January 14, 1985.—Decided October 17, 1985.*
(Also reported in 377 N.W.2d 204.)

---

† Petition to review denied.

For the plaintiff-appellant the cause was submitted on the briefs of *Burton A. Strnad* and *Burton A. Strnad, S.C.* of Milwaukee.

For the defendant-respondent the cause was submitted on the brief of *James R. Long* of Appleton.

For defendant Alfred Garionis there was a brief *pro se*.

Before Gartzke, P.J., Dykman, J. and Rudolph T. Randa, Reserve Judge.

DYKMAN, J. Lillian Potts, on behalf of the Estate of Charles Gavcus, appeals an order which provides that certain silver coins owned by Charles were given as a gift to Constance Gavcus during Charles' lifetime.[1] The issues

---

[1] Lillian Potts commenced this action pursuant to sec. 879.63, Stats., to secure the coins for the estate. Section 879.63 provides:

> Whenever there is reason to believe that the estate of a decedent as set forth in the inventory does not include property which should be included in the estate, and the personal representative has failed to secure the property or to bring an action to secure the property, any person interested may, on behalf of the estate, bring an action in the court in which the estate is being administered to reach the property and make it a part of the estate. If the action is successful, the person interested shall be reimbursed from the estate for the reasonable expenses and attorney's fee incurred by him in the action as approved by the court but not in excess of the value of the property secured for the estate.

are whether the elements of a gift were proven, whether the trial court erred by admitting lay opinions, and whether Constance and Charles held the coins as joint tenants. We affirm because the findings as to the elements of a gift are not clearly erroneous, the trial court's inferences were reasonable, and evidentiary errors, if made, were harmless.

Charles died in 1981. He was survived by Lillian Potts, a daughter from a previous marriage, and his wife, Constance. His will provides that part of his estate is to be placed in a marital trust payable to Constance for life, with the remainder placed in a trust of which Lillian and Alfred Garionis, Charles' stepson, are beneficiaries.

The trial court made extensive findings of fact: Charles and Constance were married in 1939 and divorced in 1947 or 1948. They reconciled and lived together at Charles' motel in Illinois from 1949 until 1970, when they remarried and moved to Fremont, Wisconsin.

While the couple lived at Charles' motel, Constance saved silver coins because she feared inflation would make paper money worthless, a phenomenon she had witnessed in Lithuania, where she was born. She had little

income during the time the couple lived together, but used tips and savings to buy silver coins. Though Charles did not pay Constance wages for her work at the motel, he permitted her to take coins from the motel cash drawer and coin operated machines. He sometimes gave her cash to buy rolls of coins from a bank, from which the silver ones were culled. Constance would roll the silver coins and place them in a hiding place in a back room at the motel.

Charles referred to the coins as belonging to Constance. He was heard to say "I am helping Connie save silver coins"; "The silver coins are Connie's property"; "I'll help Connie with her coins"; and "Momma, here's some more silver." On many occasions, he referred to the coins as "Momma's silver."

By 1969, when Charles sold the motel, silver coins were largely out of circulation, and the coin collecting had ceased. In 1970, Charles built a home with a secret compartment for the coins in Fremont, Wisconsin. Charles and Constance remarried, and moved into the Fremont home. After the move to Fremont, Alfred suggested that Charles put the silver in a bank, but Charles refused.

The trial court concluded that Charles gave the coins to Constance during his lifetime, thus excluding them from the estate's inventory. Lillian appeals.

*Elements of Gifts*

In *In Matter of Estate of Reist,* 91 Wis.2d 209, 218, 281 N.W.2d 86, 90 (1979), the court listed four elements necessary for a valid gift: (1) intent to give on the part of the donor; (2) actual or constructive delivery to the donee; (3) termination of the donor's dominion over the property; and (4) dominion in the donee. The *Reist* court relied on *Hoffman v. Wausau Concrete Co.,* 58 Wis.2d 472, 484, 207 N.W.2d 80, 86 (1973), for the list of elements. *Hoffman* in turn relied on *Prestin v. Baumgartner,* 47 Wis.2d 574, 579, 177 N.W.2d 825, 828 (1970), and *Peters v. Peters Auto*

*Sales, Inc.,* 37 Wis.2d 346, 350, 155 N.W.2d 85, 87 (1967), for their recitation of the elements necessary for a valid gift. *Prestin* relies upon *Peters* for the four elements test, and *Peters* cites *Estate of Detjen,* 34 Wis.2d 46, 148 N.W.2d 745 (1967) and *Madison Trust Co. v. Skogstrom,* 222 Wis. 585, 269 N.W. 249 (1936) for this test.

The *Dejten* and *Skogstrom* courts listed the requirements for a valid gift:

> Generally, a gift *inter vivos* is completed when a delivery of the subject of the gift is made by the donor with intention to part with his interest in and over the property given. *Optiz v. Karel* (1903), 118 Wis. 527, 529, 95 N.W. 948; *Madison Trust Co. v. Skogstrom* (1936), 222 Wis. 585, 588, 269 N.W. 249. What form the delivery of the property must take depends upon its nature and the situation of the parties. *Horn v. Horn* (1913), 152 Wis. 482, 487, 140 N.W. 58; *Estate of Dohm* (1926), 188 Wis. 626, 628, 206 N.W. 877.

*Detjen,* 34 Wis.2d at 55, 148 N.W.2d at 749.

> The generally accepted rule is that in every gratuitous transfer of title from one person to another there must be an actual or constructive delivery of the subject matter of the gift or transfer. The cases recognize as essential elements in these matters: (1) intention to give; (2) delivery; (3) end of dominion of donor; (4) creation of dominion of donee. *Wells v. Collins,* 74 Wis. 341, 43 N.W. 160; *Crook v. First National Bank of Baraboo,* 83 Wis. 31, 52 N.W. 1131; *Optiz v. Karel,* 118 Wis. 527, 95 N.W. 948. It is said in *Northwestern Mut. Life Ins. Co. v. Wright,* 153 Wis. 252, 256, 140 N.W. 1078: "The transition may be accomplished by acts or words, or both, showing intention to part with title and deprivation of dominion over the thing or paper calling therfor."

*Skogstrom* 222 Wis. at 588, 269 N.W. at 250.

The cases cited in *Skogstrom* were concerned with how a gift could be delivered when the thing itself was

51

not deliverable such as money in a bank account. *(Crook).* Rent not yet accrued *(Wells),* and insurance policies *(Opitz* and *Northwestern Mut. Life Ins. Co.)* also raised questions whether symbolic delivery was adequate to consummate a gift. In this context, the "dominion" language developed, though it was a way of expressing when delivery was accomplished. The *Opitz* court said:

> The facts in this case present the question, Could the proceeds of this policy be made the subject of a gift, as claimed by the plaintiff? To consummate a gift *inter vivos,* there must be an absolute delivery of the subject of the gift by the donor, with an intention to part with his interest in and dominion over the property sought to be transferred.

*Opitz,* 118 Wis. at 529, 95 N.W. at 949.

Ordinarily, a change in dominion from donor to donee is accomplished by a delivery. Whether a valid gift requires an intent to surrender dominion or a surrender of dominion is usually of no consequence where donor and donee reside in separate homes. Where they reside in the same home and the disputed gift is kept in the home, problems of surrender and creation of dominion arise. The supreme court addressed this problem in *Horn v. Horn,* 152 Wis. 482, 140 N.W. 58 (1913). In *Horn,* a father and his youngest son lived on a farm. The father divided his horses between his two sons, one of whom lived elsewhere. When the father died, a dispute arose as to the ownership of the horses which remained on the father's farm. The court concluded that a valid gift had been proven, though the horses never left the decedent's farm. The court said:

> It is without dispute that the sons Charles and *Louis* had remained with their father, performed the labor, and attended to his farming business. It is also clearly shown that the father, from gratitude and affection and in consideration of their services, made a disposi-

tion of his stock by dividing it among these two sons, he retaining two colts. This transaction is of importance in explaining their subsequent conduct and in aiding us to ascertain the intention of the parties. *Louis* alone remained with his father after Charles removed from the parental home, and he continued on the farm until his father's death. Under these circumstances a delivery of the horses to *Louis* required no act from the father aside from his declaration that he then gave them to *Louis* and surrendered dominion over them, and aside from his regarding them thereafter as the property of *Louis*. The intention of the father to pass title thereto to *Louis* is clearly shown by his subsequent conduct in claiming no right or dominion over them and in permitting *Louis* to handle and dispose of them as his individual property. *Louis'* treatment of them from this time, in all its details, is entirely consistent with his claim of ownership. . . .

The question of the delivery of this property and the transfer thereof is controlled by the nature of the property and the situation of the parties at the time. [Emphasis in original.]

*Id.* at 487, 140 N.W. at 60.

The *Horn* court relaxed the rules as to delivery and dominion, explaining that this was justified because of "the situation of the parties." Other courts have been more explicit. In *McCune v. Brown,* 648 S.W.2d 811, 814 (Ark. Ct. App. 1983), the court said: "The rule with respect to delivery of gifts is not so strictly applied to transactions between members of a family." The Texas supreme court also recognized that the rules as to gifts between family members should be relaxed. In concluding that a husband made a valid gift of an automobile to his wife, the court said:

[T]he rules as to delivery are relaxed somewhat where the donor and donee are members of a family living together in the same house. In determining whether there has been a delivery from a husband to his wife,

the relation of the parties as well as the nature and situation of the subject matter must be considered. Respondent told petitioner he was giving her the Cadillac, and at the same time delivered the vehicle into her possession. This is enough to support a finding that the automobile was given to her. [Citations omitted.]

*Bishop v. Bishop,* 359 S.W.2d 869, 871–72 (Tex. 1962). The common-sense reason for this rule was explained in *Kidd v. Kidd,* 216 S.W.2d 942, 945 (Mo. App. 1949):

[The husband and wife] must both understand that he intends to part, and is parting, with all his title to the subject of the gift and is vesting title to her to hold as her own; and he must give up all dominion over the property, subject to the qualification that the determination of the sufficiency of the delivery must be considered in connection with the nature and situation of the subject of the gift and in the light of the peculiar and intimate relation existing between the parties. Certainly the wife need not separate from her husband in order to be in a position to receive his gift; and it is to be expected that after receiving it she would keep it in their common habitation, where it might, as in the case of furniture, be subject to the husband's use. [Citations omitted.]

We conclude that a relaxed rule as to delivery and dominion applies when determining whether persons living in the same household have made and received a gift.

Using the rule we have adopted, we conclude that the trial court's findings of fact are not clearly erroneous, the test we now use. Sec. 805.17(2), Stats.; *Noll v. Dimiceli's, Inc.,* 115 Wis.2d 641, 643, 340 N.W.2d 575, 577 (Ct.App. 1983). We must accept a reasonable inference drawn by a trial court from established facts if more than one reasonable inference may be drawn. *Pfeifer v. World Service Life Ins. Co.,* 121 Wis.2d 567, 571, 360 N.W.2d 65, 67

(Ct.App. 1984). We therefore accept the trial court's inference that because Charles referred to the coins as "Connie's" or "Momma's silver," and permitted Connie to roll the coins and take them to the back room at the motel, that he intended to give the coins to Connie. Likewise, we accept the trial court's inference that Charles delivered the coins to Connie by giving her money to buy rolls of coins, permitting her to take coins from the cash drawer, and referring to coins already rolled and stored in the back room as "Connie's" or "Momma's silver." Using a relaxed standard as to the transfer of dominion between members of the same household, Connie's accumulation of the coins, with Charles' acquiescence and his statements as to the owner of the coins is sufficient evidence to permit a reasonable inference that Charles terminated dominion over the coins, and Connie asserted dominion over them. We therefore affirm the trial court's finding that Charles gave the coins to Constance.

*Lay Witness Opinion*

Appellant contends that the trial court erred by admitting testimony from four witnesses that the coins were a gift to Constance. We are required to disregard any error which does not affect the substantial rights of a party. Rule 805.18(1), Stats. The test for harmless error is whether, but for the error, there probably would have been a different result. *Jax v. Jax,* 73 Wis.2d 572, 582, 243 N.W.2d 831, 837 (1976).

The trial court made 43 findings, one of which pertained to the opinion evidence of which appellant complains. The trial court's opinion focused primarily on Charles' and Constance's words and deeds and the inferences to be drawn from them. Had the opinion evidence been excluded, the result of this case would be no different. If the trial court erred, the error is harmless.

*Joint Tenant Interest*

Appellant argues that if Constance had any vested interest in the silver coins, it was as a joint tenant with Charles.

This argument again raises the "delivery" and "dominion" issues we have previously addressed. We need not do so again.

*By the Court.*—Order affirmed.