[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff Lillian Soucy has applied for a $35,000 prejudgment remedy pursuant to General Statutes § 52-278a et seq., seeking to attach certain real estate in the City of CT Page 439 Waterbury (the "Property") owned by the co-defendant Cheryl Hilbert. The plaintiff contends that in 1994 she made loans totaling $28,995 to the defendant Allan Soucy, her son, which he has refused to repay. (Because Allan Soucy is the principal defendant, he will hereafter be referred to as the defendant. Hilbert will be referred to by name.) The plaintiff further claims that her son fraudulently conveyed the Property to Hilbert, his longtime girlfriend, without consideration. The defendant contends that everything which he received from the plaintiff was a gift.
After an evidentiary hearing, the court finds the facts hereafter set forth. In January 1994, the defendant, who resided in California with Cheryl Hilbert, contacted his mother, the plaintiff, who resides in Waterbury, and asked her for money for medical tests which he needed to diagnose a problem with his arm. The defendant, who was self-employed as a woodworker, did not have health insurance. The plaintiff, a 72 year old widow living on Social Security, withdrew money from her bank account and sent her son a bank check. The plaintiff sent him the money despite their twenty year estrangement because of her concern for his health and because she was emotionally drained at the time by the illness of her sister. After the tests revealed that surgery was necessary, the plaintiff sent the defendant additional bank checks totaling $10,000 to pay for the surgery. Because of his medical problems, Allen Soucy did not work at all during 1994 and the plaintiff sent him additional bank checks throughout the year for household and other expenses. The checks totaled $22,395.
In addition, the plaintiff spent approximately $5000 that same year to purchase a car for her son, to have it transported to California and to provide him with money for insurance and registration after he told her that his car had fallen apart. In May, 1994, both defendants came to Waterbury from California for the funeral of the plaintiff's sister Marie. The plaintiff gave them $1200 in cash at that time. The total of all these sums advanced to or for the benefit of the defendant is $28,995, which was substantially all of the plaintiff's savings. In early 1995 the plaintiff contacted her son and asked him to begin paying back the loans in installments of $200 to $300 per month. He paid nothing. In December, 1995, the plaintiff retained an attorney, who sent the defendant a letter requesting a payment schedule. No payments have ever been made. CT Page 440
The plaintiff admitted in her testimony that there was no discussion when she provided her son with the bank checks, car and cash as to whether the funds were loaned or a gift. However, she credibly testified that he well knew that she could not afford to give her savings away. Widowed since 1966, she had very limited financial resources, of which her son was aware.
The defendant admits receiving all of the bank checks sent by his mother as well as the $1200 in cash. He contends, however, that the funds represented by the bank checks were a gift from his aunt Marie, the plaintiff's sister. He testified that in 1994 because Marie was ill and in failing health and homebound, the plaintiff moved to Marie's house to assist her. According to the defendant, he told the plaintiff and Marie of the medical problems with his arm on a visit from California in January, 1994. He testified that although he did not request money, they insisted that he take money from Marie for his medical bills and support while he could not work. He testified that the plaintiff's name is on the bank checks as purchaser of the checks because she did the banking for her housebound sister. Soucy testified that Marie's husband did not believe in bank accounts and therefore their savings were kept in the house — in the cellar and in a bag located in the hall closet. There were thousands of dollars, probably more than $20,000, he testified. Conveniently for the defendant, Marie died in May, 1994 and can neither confirm nor deny his testimony.
With respect to the car, the defendant Soucy testified that he did not ask for a car and did not need a car, and he told that to his mother, but his mother nevertheless insisted on sending him the car. He testified that his mother sent him a signed, written statement dated August 24, 1994 stating that she was making a gift of the car to Hilbert. He admitted selling the car when he and Hilbert recently relocated in Colorado, but he failed to send any of the proceeds to his mother, despite her request to his attorney that he do so.
The court found that the testimony of the defendant Allan Soucy was not credible. He glibly related highly improbable versions of events. He testified that the plaintiff insisted on sending him the car despite his telling her that he did not want it. The plaintiff, however, very credibly testified about her limited income and assets. A 1992 letter of hers introduced into evidence reveals her fears about whether she could meet her CT Page 441 living expenses on Social Security income alone. The plaintiff is not someone who would needlessly expend $5000 for a car which the defendant stated that he did not want.
Moreover, the relationship between the plaintiff and defendant was a poor one and not such that she would make gifts to her son. After turning eighteen, the defendant left home and joined the service. After discharge from the service, he returned home only briefly. He moved to California in 1967 and lived there until 1997, when he relocated to Colorado. Since 1967, the plaintiff and the defendant have been estranged. The defendant described their relationship as "fragmented." When he came to Waterbury to visit during these years, he did not stay with his mother; he stayed with his aunts. The plaintiff and the defendant stopped exchanging Christmas gifts long before 1994 and the plaintiff had not made any gifts to the defendant for many years. The defendant's testimony that the car was a gift is not credible.
In support of his claim that the car was a gift, the defendant relies on a written statement signed by the plaintiff and sent to the defendant in California. It states that the plaintiff made a gift of the car to Hilbert on August 24, 1994. The defendant denied on cross-examination that he asked his mother to send him this statement in order to avoid payment of California sales tax. The plaintiff, however, credibly testified that she put the car in Hilbert's name at the defendant's request and that she wrote the statement at his request as well so that he could file it with the California Department of Motor Vehicles. These requests by the defendant belie his claim that the plaintiff insisted on buying him a car despite his telling her that he did not want it.
The court does not credit the defendant's wild tale that the bank checks and cash that he received were gifts from his Aunt Marie, who had over $20,000 in cash in her hall closet. His testimony was not corroborated by anyone. It was contradicted by the plaintiff, who credibly testified that Marie was of modest means and did not have a substantial amount of money. The plaintiff further credibly testified that Marie, who was seriously ill, was cared for by aides in her home around-the-clock at a cost of approximately $1000 per week, making it highly unlikely that she would make a gift of $23,000 to her nephew. Marie may have forwarded some money of her own to the defendant in 1994, but the plaintiff testified emphatically at CT Page 442 the conclusion of the hearing that all of the money in the bank checks sent to the defendant was her own. The court credits the testimony of the plaintiff over that of the defendant on all material points.
General Statutes § 52-278d provides that the court shall grant a prejudgement remedy if it finds that the plaintiff has shown at a hearing that there is probable cause that judgment in the amount of the prejudgment remedy sought will be rendered in the plaintiff's favor, taking into account any defenses, counterclaim or set-offs. A loan is made when a borrower receives money over which he or she exercises dominion and promises to repay the same expressly or impliedly. Rogers v.Hannon-Hatch Post No. 9929, 23 Conn. Sup. 326, 327 (1962). A complaint which alleges a "loan", but does not allege an express promise to repay is broad enough to include recovery based on an implied promise to repay. Smith v. Hendricks, 43 Ga. App. 361,158 S.E. 764, 765 (1931). Such is the case here, where the plaintiff alleges loans to the defendant, but does not allege an express promise to repay. An implied agreement may be shown by the conduct of the parties interpreted in the light of the surrounding circumstances. Boland v. Catalano, 202 Conn. 333,337 (1987). A promise of repayment of money advanced may be implied from the conduct of the parties, the amount of payments, the relationship and affection (or lack of it) between the parties and whether the circumstances indicate a promise of repayment. Estate of Detjen, 34 Wis.2d 46, 53, 148 N.W.2d 745
(1967).
Early in 1994, the plaintiff and the defendant had been estranged for almost thirty years. There was no affection between them. The plaintiff had no history of making gifts to the defendant and they had not exchanged Christmas presents in many years. Widowed for over thirty years, the plaintiff's only income was Social Security and she was fearful that she could not meet her expenses on Social Security alone. Her only asset was a bank savings account and she advanced the defendant funds from that account because of his medical problem. The defendant knew of the plaintiff's dire financial condition and knew that she could not afford to make a gift to him of substantially all of her savings. Based on these facts and circumstances, the court finds probable cause for an implied promise to repay the plaintiff for the funds which she advanced. The court further finds that there is probable cause that judgment will be rendered in the plaintiff's favor against the defendant in the CT Page 443 amount of the prejudgment remedy application. The defendant bears the burden of proving his claim that the transfers were gifts. Capozzi v. Luciano, 174 Conn. 170, 173 (1978). The defendant failed to sustain his burden in that the court found that his testimony was not credible.
The Property, which the plaintiff seeks to attach, is owned of record by Cheryl Hilbert. In the second count of her proposed complaint, the plaintiff alleges that the defendant fraudulently conveyed the Property to Hilbert by a quitclaim deed dated December 19, 1995, which was given without consideration and with an intent to defraud the plaintiff.
In 1991, Connecticut adopted the Uniform Fraudulent Transfer Act (the "Act"), General Statutes § 52-552a et seq. There are two types of fraudulent conveyances, both under the common law interpreting Connecticut's former statute, General Statutes § 52-552, and under the new Act. E. Weiss, "Connecticut Fraudulent Conveyance Law," 11 Univ. of Bridgeport Law Review 489 (1991); E. Weiss, "Connecticut Adopts Uniform Fraudulent Transfer Act," Connecticut lawyer (Dec. 1991). The first type is an intentional fraudulent transfer, one made "with actual intent to hinder, delay or defraud" any creditor. The second type of fraudulent transfer is a constructive fraudulent transfer. The plaintiff here alleges an actual fraudulent transfer. Under § 52-552e(a)(1), a transfer is fraudulent as to a creditor if the creditor's claim arose before the transfer was made and the debtor made the transfer with actual intent to hinder, delay or defraud a creditor.
The Property was transferred from the defendant to Hilbert by a deed dated December 19, 1995. The plaintiff's claim clearly arose prior to the transfer. She first asked for repayment of the loans early in 1995. Moreover, she retained an attorney later in 1995 who wrote a letter to the defendant dated December 1, 1995 seeking agreement on a repayment schedule. The first element for an intentional fraudulent transfer is established.
The second element is an actual intent to hinder, delay or defraud a creditor. Recognizing that direct evidence of such intent may be infrequently found, § 52-552e(b) provides that in determining actual intent, "consideration may be given, among other factors" to eleven stated factors, which are so-called "badges of fraud." Id. One such factor is shown on the facts CT Page 444 of the present case. The defendant was threatened with suit prior to the transfer being made. General Statutes § 52-552e(b)(4). Attorney Coviello's letter of December 1, 1995 referred to "taking this matter . . . further" if a repayment schedule were not agreed upon. Two important additional factors that are not set forth in the Act are also present here. First, the defendant transferred title to the Property to Hilbert without any consideration at all, despite the fact that the Property has considerable value: it is currently listed for sale for $93,000. Secondly, the transfer occurred only two weeks after the defendant received the December 1 letter from Attorney Coviello advising of his mother's claim. Despite the defendant's residing in California at that time, he returned to Connecticut, found an attorney, and executed the quitclaim deed in the State of Connecticut within approximately two weeks of receiving Attorney Coviello's letter. The close time proximity between receipt of the letter and the transfer is particularly telling to the court.
The defendant testified that he transferred the Property to Hilbert on the advice of his accountant to avoid exposing the Property to claims which might be made against him arising out of his woodworking business. The court doubts the veracity of this testimony because of the defendant's overall lack of credibility. The court finds probable cause that judgment will be rendered that the defendant transferred the Property to Hilbert with an actual intent to hinder and defraud a creditor, the plaintiff.
Based on the evidence and inferences drawn therefrom, the court finds probable cause that judgment will be rendered in the plaintiff's favor against the defendant on the plaintiff's claim of fraudulent conveyance of the Property. Accordingly, the plaintiff's application for a prejudgment attachment of the Property in the amount of $35,000 is granted.
VERTEFEUILLE, J.